**Elbert WILSON, Jr., Appellant,**

v.

**Harold A. FARRIER, Iowa Director of Adult Corrections, Crispus C. Nix, Warden, Iowa State Penitentiary, and State of Iowa, Appellees.**

No. 83–1635.

Supreme Court of Iowa.

July 31, 1985.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Sarah J. Coats, Asst. Atty. Gen., for appellees.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

REYNOLDSON, Chief Justice.

We granted further review in this controversy to clarify the appropriate standard of judicial review in appeals from prison disciplinary committees. On appeal, petitioner Elbert Wilson asserted the district court wrongfully denied him postconviction relief when it found there was sufficient evidence to support the committee's determination that petitioner was guilty of a rule infraction. The court of appeals reversed the district court ruling on the ground the record did not disclose "substantial evidence" to support the committee's decision. We hold it is sufficient if the findings of the prison disciplinary committee are supported by some evidence. Accordingly, we vacate the court of appeals opinion and affirm the decision of the district court.

This is another case resulting from the murder of Gary Tyson by fellow members of the "Almighty Vice Lords" during an uprising at the Iowa State Penitentiary on September 2, 1981. *See State v. Williams*, 360 N.W.2d 782, 784 (Iowa 1985); *State v. Doss*, 355 N.W.2d 874, 876–77 (Iowa 1984). After order was restored, petitioner was placed in summary segregation following service of notice that he was to be prosecuted for breach of penitentiary rule 01 (killing, attempting to kill, injure, or maim another person).

Although petitioner was acquitted of Tyson's murder in a criminal trial, he was found guilty of the rule infraction in a hearing and three rehearings before the prison disciplinary committee. The committee found that petitioner, along with numerous other Vice Lords, was present in the kitchen area where Tyson was murdered and participated in the crime. The committee relied on statements of a confidential informant who saw Wilson at the scene. It also inferred petitioner's guilt from his denial that he was present at the scene. The committee invoked several sanctions, including one year of administrative segregation, loss of honor contract, and loss of all good and honor time to date.

Petitioner's amended postconviction pleading alleged "the evidence relied on as indicated by the written findings of fact and disposition at the third rehearing ... are insufficient and contrary to constitutional standards and safeguards."

The district court found the evidence on which the committee based its decision to be adequate and dismissed petitioner's application. Petitioner filed notice of appeal. We transferred the case to the court of appeals. That court, in a divided opinion, vacated the district court judgment and remanded the case for further evidentiary hearing. We granted respondent's application for further review. The record now reflects that petitioner was paroled on December 19, 1984.

In the divisions that follow, we address three of the issues presented by this appeal:

1. Does this controversy fall within one of the exceptions to the mootness doctrine?

2. In a postconviction relief action challenging the decision of a prison disciplinary committee, what scope of review is dictated by the due process clause of the United States Constitution?

3. Does the evidence in the instant proceeding meet the requisite standard of review?

■ I. Because petitioner now is paroled, the issues he raises are academic and the case is moot. *Toomer v. Iowa Department of Job Service*, 340 N.W.2d 594, 598 (Iowa 1983). We view the basic underlying question, however, as one of public importance, *see Colton v. Branstad*, 372 N.W.2d 184, 187 (Iowa 1985), and one that meets the two-prong test of *Rush v. Ray*, 332 N.W.2d 325, 326–27 (Iowa 1983).

II. Although the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that due process requires *procedural* protections before a prisoner can be deprived of a protected liberty interest in good time credits, *id.* at 557–58, 94 S.Ct. at 2975–76, 41 L.Ed.2d at 951–52, that court has yet to decide whether due process would require judicial review of prison disciplinary proceedings. *See Walpole v. Hill*, —— U.S. ——, ——, ——, 105 S.Ct. 2768, 2771–73, 86 L.Ed.2d 356, 361–63 (U.S.1985). Respondent does not challenge the view, however, that 1983 Iowa Code sections 663A.2(6), 246.39 and 246.43 create a liberty interest in good and honor time.[1] Accordingly, we proceed on the assumption that the protections of the fourteenth amendment apply to petitioner's loss of credits in this case. *Walpole*, —— U.S. at ——, 105 S.Ct. at 2771–73,

86 L.Ed.2d at 361–63; *see Davis v. State*, 345 N.W.2d 97, 99 (Iowa 1984).

■ Petitioner contends his right to substantive due process under the United States Constitution was violated because there were insufficient facts to support the decision of the prison disciplinary committee. In determining the minimal record that will support a disciplinary committee's decision we need only turn to the United States Supreme Court's opinion in *Walpole*, a decision not available to either the district court or the court of appeals as they considered the merits of this controversy. The *Walpole* Court wrote:

> Because the written statement mandated by *Wolff* requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.
>
> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take

---

**1.** *See Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975, 41 L.Ed.2d at 951 ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Four-teenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.").

place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

—— U.S. at ——, 105 S.Ct. at 2774–75, 86 L.Ed.2d at 365 (citations omitted).

The ultimate holding in *Walpole* was messaged by the Eighth Circuit Court of Appeals in *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir.1974):

Where procedural due process has been afforded in the prison proceeding, [the *Wolff*] statement will provide prison officials with documentary proof demonstrating the factual basis of any action by the prison disciplinary board. *A result can be reached at the pleading stage.* As we have noted previously, the role of the district court is not to afford a de novo review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by *some* facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise the federal court would assume the task of retrying all prison disciplinary disputes.

*Id.* at 1018 (citations omitted and emphasis added). The "some evidence" rather than the "substantial evidence" standard is generally followed in the federal circuits. *See, e.g., Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir.1984); *Adams v. Gunnell,* 729 F.2d 362, 370 (5th Cir.1984); *Wolfe v. Carlson,* 583 F.Supp. 977, 981 (S.D.N.Y. 1984); *Finney v. Mabry,* 455 F.Supp. 756, 770 (E.D.Ark.1978).

The parties before us cite prior opinions of this court to support their respective contentions that we have adopted one or the other of the above standards. None of our decisions, of course, has confronted this issue head on. In any event, as petitioner invokes only the federal constitution, *Walpole* settles the issue. Language in our decisions deemed inconsistent with the *Walpole* "some evidence" standard is overruled.

Thus we turn to the final issue: "whether there is any evidence in the record that could support the conclusion reached by the disciplinary [committee]." *Walpole,* —— U.S. at ——, 105 S.Ct. at 2774, 86 L.Ed.2d at 365.

■■ III. At the outset we note that petitioner's acquittal on the murder charge is not controlling on this question. An acquittal on a criminal charge does not foreclose a prison administration from imposing disciplinary measures for infraction of prison rules, even though both the indictment and the disciplinary proceeding arise from the same incident. *See Rusher v. Arnold,* 550 F.2d 896, 898–99 (3d Cir.1977); 1968 Op.Att'y Gen. 576, 577–78.

■■ The prison disciplinary committee had before it a confidential information statement that was examined *in camera* by the district court and reexamined by us. It places petitioner in the murder area at the time Tyson was killed. This statement contains the information that "all the [Almighty Vice] [L]ords started hitting on Tyson." The committee's decision discloses that it relied on and believed the confidential informant's version of the murder, including petitioner's participation in the assault leading up to the homicide. The committee had the right to rely on the information from the informant and to disbelieve petitioner's denial. *See Kelly v. Nix,* 329 N.W.2d 287, 294 (Iowa 1983) ("[W]e find that Kelly was not deprived of any constitutional right of due process by the use of a confidential informant. . . ."). Nor does petitioner have a constitutional right to examine the confidential informant. *See Wolff,* 418 U.S. at 568–69, 94 S.Ct. at 2981, 41 L.Ed.2d at 958; *Niday v. State,* 353 N.W.2d 92, 93–94 (Iowa 1984). The postconviction testimony of a hearing officer committee member that petitioner was a

Vice Lord, and the confidential informant reliable, was unrefuted. Nor has petitioner raised these issues on appeal.

■ The committee also considered, as bearing on his violation of the prison rule, his untruthfulness in denying his presence at the scene of the murder. Disciplinary hearings are not part of a criminal prosecution, *Ponte v. Real*, —— U.S. ——, ——, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553, 558 (1985), and drawing an adverse inference from a prisoner's silence at his or her disciplinary proceeding is not invalid, *Baxter v. Palmigiano*, 425 U.S. 308, 320, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810, 822 (1976); *see Kelly v. Nix*, 329 N.W.2d at 294–95. Therefore, it must follow that an adverse inference can be, and in this case was, drawn from a prisoner's unwillingness to tell the truth.

Considered in light of the *Walpole* standard followed in division II, we hold there was sufficient evidence in the record to support the committee's decision. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED AND JUDGMENT OF DISTRICT COURT AFFIRMED.