Ronald MAHERS, Appellant,

v.

STATE of Iowa, Appellee.

Stephen C. LEONARD, Appellant,

v.

STATE of Iowa, Appellee.

Nos. 88–579, 88–281.

Supreme Court of Iowa.

March 22, 1989.

Raymond E. Rogers, Acting State Public Defender, for appellant Mahers.

Raymond E. Rogers, Acting State Public Defender, and B. John Burns, Asst. State Public Defender, for appellant Leonard.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., John M. Parmeter, and Suzie A. Berregaard, Asst. Attys. Gen., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

These cases present a common issue: the extent to which an inmate has the due process right under the fourteenth amendment of the United States Constitution to call witnesses at a disciplinary hearing.

Ronald Mahers and Stephen C. Leonard, while inmates, were each charged with infractions of prison disciplinary rules. Mahers apparently wanted to call three other inmates as witnesses at his disciplinary hearing to assist with his defense. Leonard, on the other hand, wanted to call prison employees who had prepared the disciplinary complaints against him. Each was denied the opportunity to call these witnesses, and the prison disciplinary committee subjected each to discipline for rule violations. Each exhausted administrative appeals and applied to the district court for postconviction relief, which was denied. Mahers and Leonard have separately appealed these denials to this court.

In addition to the witness issue, Mahers argues that the committee's decision in his case was not supported by sufficient evidence, and Leonard argues that the committee failed to hold or continue his hearing within the required length of time.

In Mahers' case, we hold that the denial of postconviction relief must be reversed because he was not allowed to call his requested witnesses. In Leonard's case, however, we affirm the district court's decision.

I. *Background Facts and Proceedings.*

A. *Mahers.* On December 19, 1986, at 10:10 p.m., Mahers was in his cell at the Iowa State Penitentiary when a correctional officer allegedly observed a fire in the cell and told Mahers four times to put it out. Mahers apparently did so after the fourth order from the officer. Mahers, however, claims he had been asleep since 7:00 p.m. on that night and was still asleep when the guard first spoke to him.

Mahers was charged with violations of three rules: rule 23 (disobeying a lawful order), rule 27 (obstructive or disruptive conduct), and rule 39 (safety and sanitation). The prison disciplinary committee held a hearing. The only evidence presented against Mahers was apparently a written statement from the officer who had allegedly observed the fire. No physical evidence of the fire was preserved or presented.

Upon Mahers' request, statements had been taken from two other inmates, Blair and Hill, and these statements were considered at the hearing. A third inmate, Swanson, had refused to give a statement to the investigating officer.

Blair's statement said that he had asked Hill to wake Mahers at 11:30 p.m. on the night in question so that Mahers would not miss a television program and so that Blair could talk to him. According to Blair, Hill was unable to wake Mahers until about 11:50. Hill's statement was consistent with Blair's.

It is not clear from the record that Mahers actually requested that Blair and Hill

be called as witnesses at the disciplinary hearing; he may only have asked the disciplinary committee to take more complete statements from them. The committee, however, did neither. Regarding Blair's original statement, the committee's written decision says that it is irrelevant that Mahers was asleep after the time of the alleged fire. The decision also says that Hill's statement could not be understood and that Swanson would not comment.

The committee found that Mahers had violated the rules in question. As punishment, he received fifteen days of disciplinary detention, loss of thirty days of good time, and six months of administrative segregation.

After exhausting his administrative appeals, Mahers applied to the district court for postconviction relief. The court denied his application, and Mahers has now appealed. He asserts that his rights under a prison rule and the due process clause of the fourteenth amendment were violated by the committee's refusal to call the requested witnesses. He also contends that the evidence against him was not sufficient.

B. *Leonard.* On February 1, 1987, at 9:50 a.m., while Leonard was working in the penitentiary kitchen, a food service worker who was not an inmate requested that Leonard help prepare trays. Leonard allegedly replied, "No, I'm not going to help." Soon after, he refused another request from the same food service worker. This worker and another one who was apparently present submitted disciplinary reports concerning this incident.

On February 2 at 7:30 a.m., Leonard was served with the disciplinary reports and placed in summary segregation. On February 4 at 11:00 a.m., he was served with a notice that his disciplinary hearing would be continued. This hearing was held on February 6.

The disciplinary committee considered the written reports of the food service workers but denied Leonard's request that they be called as witnesses. The committee stated in writing that the workers should not be called because their testimony, with Leonard's questioning, would have amounted to cross-examination.

The committee found that Leonard had violated prison rule 23 (disobeying a lawful order). As punishment, he was given ten days of disciplinary detention, loss of sixteen days of good time, and "invocation of any summary disposition."

After exhausting his administrative appeals, Leonard applied to the district court for postconviction relief. The court denied his application, and he has now appealed to this court. Leonard asserts that the refusal to call his requested witnesses violated his rights under a prison rule and the due process clause of the fourteenth amendment. He also argues that the committee failed to either hold or continue his hearing within "two working days," which is required by a prison rule when summary action has been taken.

II. *Scope of Review.*

In considering the constitutional issues concerning the right to call witnesses and the sufficiency of the evidence, we review the case de novo in light of the totality of the circumstances. *See Fichtner v. Iowa State Penitentiary,* 285 N.W. 2d 751, 752 (Iowa 1979); *see also Wilson v. Farrier,* 372 N.W.2d 499, 501–02 (Iowa 1985) (sufficiency of evidence as due process issue). Regarding the time limit issue, we only examine the district court's decision to correct errors of law. *State v. Cullison,* 227 N.W.2d 121, 126 (Iowa 1975).

III. *The Right to Call Witnesses at a Disciplinary Hearing.*

In *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751 (Iowa 1979), we discussed in detail prisoners' due process rights at a disciplinary hearing. These rights are mandated by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). " 'In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.' ... 'Prison disciplinary proceedings are not part of a criminal prosecution,

and the full panoply of rights due a defendant in such proceedings does not apply.' " *Fichtner*, 285 N.W.2d at 756 (quoting *Wolff*).

But we went on to say that "[o]n the other hand, occupants of penal institutions, although prisoners, are persons, and they are not beyond the pale of the Constitution. Prison officials must not permit a disciplinary proceeding against such a person to be a mere gesture or a sham. The person has a liberty interest protected by the due process clause." *Id.* Specifically, a prisoner has a due process right at a disciplinary hearing to call witnesses and present written evidence. *Id.* at 757. This right, however, is not unlimited. The prisoner should be allowed to " 'call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.' " *Id.* (quoting *Wolff*).

Following the Supreme Court's suggestion in *Wolff*, we have recommended, without actually requiring, that the authorities offer reasons for refusing a prisoner's request to call witnesses: "If the officers refuse to call witnesses, they would be well advised to indicate their reason in their decision; otherwise they run increased risk that their refusal may appear unjustified under the particular circumstances." *Id.* at 759.

■ Under *Wolff*, however, the prisoner does not have a due process right to confront or cross-examine witnesses. *Fichtner*, 285 N.W.2d at 758 (citing *Wolff*). The Supreme Court reasoned that " '[c]onfrontation and cross-examination present greater hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were allowed as a matter of course, as in criminal trials, there would be considerable havoc inside the prison walls.' " *Fichtner*, 285 N.W.2d at 758 (quoting *Wolff*).

We explained in *Fichtner* that a prisoner "may question the evidence against him to the extent that he may personally respond to the contents of the report and produce evidence in support of his position." *Id.* at

759. We recognized, however, that *Wolff* does not give a prisoner the right to be confronted by opposing witnesses. *Id.*

Hence, an inmate has a due process right under some circumstances to call witnesses. In addition, prison rule III(D)(6) provides that an inmate "shall be permitted to offer evidence supporting his case, including ... the calling of witnesses." This rule was clearly intended to effectuate the rights of prisoners mandated by *Wolff* and *Fichtner*.

■ We think the key to resolving the witness issues in these cases is the status of the requested witness. In *Wolff* the Supreme Court said that a prisoner should be allowed to call witnesses " *'in his defense.'* " *Fichtner*, 285 N.W.2d at 757 (emphasis added) (quoting *Wolff*). The prison rule in question uses a similar phrase: the inmate "shall be permitted to offer evidence *supporting his case.*" (Emphasis added.)

On the other hand, concerning the lack of a right of confrontation, we have spoken in terms of *"opposing* witnesses." *Fichtner*, 285 N.W.2d at 759 (emphasis added). In their arguments on the witness issue, both inmates recognize that they have no due process rights to confront or cross-examine witnesses and that the authorities may refuse to call witnesses for reasons such as safety or irrelevance.

In the case of Mahers, who wanted to call other inmates as witnesses, the limited nature of the evidence against him—only the officer's report—made the possible testimony of his witnesses relevant. Such witnesses, in expanding on their written statements while testifying, might clarify what Mahers was doing at the time of the fire. Their statements do not touch on that time period.

No security problem was cited by the authorities. In addition, the inmates in question had not been used to present evidence against Mahers, so no potential for cross-examination existed.

We think the circumstances in Mahers' case justified his request for the witnesses.

Accordingly, we must reverse the district court's denial of postconviction relief.

As to Leonard's claim, the case for allowing the requested witnesses to be called is considerably weaker. He wanted to call prison employees who had prepared disciplinary reports *against* him. Hence, calling them as witnesses would present the possibility that Leonard would try to cross-examine them, which he has no right to do.

Leonard claims, however, that he wanted to elicit *new* information from them, instead of merely discrediting their written statements. He offers a plausible suggestion regarding the prevention of cross-examination: the district court could simply halt the witnesses' testimony if cross-examination occurred. In addition, he argues that under the district court's reasoning, the authorities could completely eliminate a prisoner's right to call witnesses by simply treating all potential witnesses as their own. For example, he suggests that the authorities might take statements from all potential witnesses before a request from the prisoner to use them.

Leonard's arguments present the drawbacks of using witness status as a "bright line," as well as a plausible solution to the problem of potential cross-examination of an opposing witness. It might indeed be beneficial for the authorities to have more rather than less information on which to base their decisions concerning disciplinary action. But, as the Supreme Court said in *Wolff,* the "greater hazards to institutional interests" that are present when an accused prisoner is brought together with the accuser may counsel in favor of denying a prisoner the right to call a witness who has given information against the prisoner.

It would not necessarily violate the *Wolff* rule against cross-examination to allow a prisoner to call a witness who has testified against that prisoner; there might be times when a prisoner could legitimately use an opposing witness to elicit entirely new and valuable information. The determination of whether an opposing witness could be used in such a way is a judgment call that should be left to the discretion of the prison authorities. We will not disturb their exercise of that discretion unless they have abused it.

Here, Leonard has not demonstrated any abuse of discretion. He does not give any clear description of the new information he wanted to elicit from these witnesses. According to his testimony, he wanted to call the food service workers merely to "clarify what [he] was doing and where [his] position was in the back room at the time." Unlike the witnesses in Mahers' case, Leonard's requested witnesses do not seem to have much to do with presenting his defense. Cross-examination was more likely his purpose in calling them. In view of these circumstances, we think the district court made the correct decision on this issue.

## IV. *Mahers: Sufficiency of the Evidence.*

▮ Mahers also suggests that the written report of the officer alone, without accompanying testimony, was not a sufficient basis for disciplinary action.

Following the U.S. Supreme Court's decision in *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), we held that only "some evidence" is needed under the due process clause to justify a prison disciplinary action. *Wilson v. Farrier,* 372 N.W.2d 499, 501–02 (Iowa 1985). This standard is rather low: the " 'sole and only issue of constitutional substance is whether there exists *any evidence at all,* that is, whether there is *any* basis in fact to support the action taken by the prison officials.' " *Id.* at 502 (emphasis added) (quoting *Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir.1974)).

In *Wilson,* we upheld a disciplinary action based on the testimony of a confidential informant. *Id.* In *Rushing v. State,* 382 N.W.2d 141, 144 (Iowa 1986), we said that disciplinary action for illegal drug use was justified by the proof provided by urinalysis. *See also Brown v. Frey,* 807 F.2d 1407, 1413 (8th Cir.1986) (short written reports on prison "riot" qualify as "evidence"); *Pierce v. State,* 433 N.W.2d 38, 39 (Iowa App.1988) (prison officers' written reports qualify as evidence).

Under the "some evidence" standard applied in these cases, the officer's report on Mahers was sufficient evidence. It certainly rises above the reliability level of a confidential informant's testimony, for example.

### V. *Leonard: Time Limits for Disciplinary Hearing.*

 Leonard also argues that the authorities violated two prison rules regarding the timing of disciplinary hearings. Rule III(D)(1)(C) provides that a disciplinary hearing must be held within four days of a complaint unless summary action has been taken. If summary action has been taken, rule V(C)(9)(B) requires the authorities to either hold or continue the hearing within two working days.

In Leonard's case, summary action was taken on February 2 at 7:30 a.m., when he was served with the disciplinary reports and placed in segregation. Leonard was served with a continuance notice on February 4 at 11:00 a.m. He argues that the continuance was served too late to satisfy the two-day rule.

The district court said that it is incorrect when reading this rule to equate "two working days" with "forty-eight hours." The court reasoned that the continuance satisfied the rule as long as it came on the second working day after the summary action, which it did in this case.

We think the district court's reading of this rule is reasonable. As such, it is affirmed.

### VI. *Disposition.*

In Mahers' case we reverse the district court's decision because Mahers should have been allowed to call his requested witnesses. We remand for appropriate further proceedings consistent with this opinion. In that regard, the disciplinary committee shall hold a rehearing, shall allow Mahers to present his witnesses, and shall signify in a written decision that the witnesses' testimony has been considered. We do not, however, mean to imply what decision the committee should reach.

In Leonard's case, we affirm the district court's decision on both issues.

REVERSED AND REMANDED IN NO. 88–579; AFFIRMED IN NO. 88–281.