**Larry GROSS, Appellant,**

**v.**

**STATE of Iowa, Appellee.**

**No. 89-533.**

Court of Appeals of Iowa.

June 26, 1990.

---

1. L.B. apparently has physical custody of M.B., Jr. and N.B.

2. M.B., Jr. is now four.

Philip B. Mears of Mears, Zimmermann & Mears, Iowa City, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Kristin W. Ensign, Asst. Atty. Gen., for appellee.

Heard by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

OXBERGER, Chief Judge.

During a random spot check of outgoing prison mail, prison authorities opened a letter written by inmate Larry Gross to his mother. In this letter Gross expressed his wish to be transferred to another institution and stated that if necessary he would assault prison guards in order to obtain a transfer.

A prison disciplinary committee found that inmate Gross had violated a prison rule by engaging in threats or intimidation. The committee imposed discipline on Gross. The policy of the institution is to randomly check and read outgoing mail. The residents of the institution are aware of this policy.

After exhausting administrative remedies, Gross challenged the disciplinary action by seeking postconviction relief. The district court denied postconviction relief, and Gross has appealed.

## I.

Gross contends that imposing prison discipline for the contents of his letter to his mother denied his right to freedom of speech under the First Amendment of the United States Constitution. In response, the State notes that the United States Supreme Court has held that limited censorship of inmate mail is permitted under the first amendment if the censorship regulations (1) promote a substantial governmental interest unrelated to the suppression of expression, and (2) are no greater than necessary to the protection of the particular governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413–412, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224, 240 (1974). The State argues that the censorship involved in the present case meets the *Procunier* standards.

In addition to his constitutional argument, Gross also contends the evidence was insufficient to establish that he had engaged in a threat or intimidation in violation of prison rules. Gross acknowledges writing the letter in question, but argues that the comment therein did not constitute a threat because it did not communicate a present intent to assault any specific guard at any particular time.

The context of the letter written by Gross is set out below:

> If they don't clear me for transfer there is only one way for me to get there and that's to go off on a guard.

Inspection of the mail does not violate that person's first amendment rights. The United States Supreme Court stated in *Procunier,* that "perhaps the most obvious example of justifiable censorship of prisoner mail would be refusal to send or deliver letters concerning escape plans or containing other information concerning proposed criminal activity, whether within or without the prison." *Procunier,* 416 U.S. at 413, 94 S.Ct. at 1811, 40 L.Ed.2d at 240.

■ The standard of review regarding prison regulations was set out in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penalogical interests. *Turner,* 482 U.S. at 93, 107 S.Ct. at 2261, 96 L.Ed.2d at 77. The court in *Turner* declared four factors which are relevant to the question of whether regulation is reasonable: (1) there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it, (2) whether there are alternative means of exercising the right that remain open to prison inmates, (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally, and (4) the absence of ready alternatives. *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2262, 96 L.Ed.2d at 79–80.

■ As to the first factor, institutional security is paramount. As a means to this end, the random reading of outgoing inmate mail is imperative. Where, as here, there was a potential harm to a guard, institutional security was threatened. Secondly, this regulation does not prohibit inmates from communicating. Gross was not disciplined for writing to his mother but because the letter to his mother contained a threat to a guard. Third, to have no policy on outgoing inmate mail would give the green light to escape and riot plans as well as threats such as Gross' to be made with no warning to prison officials. As to the fourth factor, there is no other way to prevent communication such as this from leaving the institution other than random checking. Accordingly, we conclude that the *Turner* standard has been satisfied and Gross' first amendment rights were not violated.

## II.

■ Gross also asserts that there is not, in fact, "some evidence" to support the decision of the disciplinary committee. A prison disciplinary committee's action will pass constitutional muster if there is "some evidence" to sustain the action taken. *Wilson v. Farrier,* 372 N.W.2d 499, 502 (Iowa 1985).

■ The rule book governing Gross defines threats as follows:

> Threats/Intimidation: A resident commits a threat when the resident communicates a present determination or intent to injure another person or to commit a crime of violence or an unlawful act dangerous to human life, presently or in the consequence of such threat or threats (whether or not such consequence in fact, occurs) is:
>
> a. To place another person in fear of bodily injury ...
>
> b. Also includes intimidation, expressed or implied, or
>
> c. To cause damage to property.

The language in the letter stating, "go off on a guard," clearly indicates an intention to injure a guard. Consequently, we agree with the decision of the trial court and conclude that the expression set forth in the letter communicates an intended act which falls within the purview of Rule 14.

A review of the record made reflects that there is "some evidence" to support the disciplinary committee's decision. We affirm the conviction.

AFFIRMED.