Michael BACKSTROM, Plaintiff,

v.

IOWA DISTRICT COURT FOR JONES
COUNTY, Defendant.

No. 91–1449.

Supreme Court of Iowa.

Nov. 24, 1993.

706

Philip B. Mears, Mears Law Office, Iowa City, for plaintiff.

Bonnie J. Campbell, Atty. Gen., and William A. Hill, Asst. Atty. Gen., for defendant.

McGIVERIN, Chief Justice.

Plaintiff Michael Backstrom, an inmate at the Iowa Men's Reformatory, was found guilty by a prison disciplinary committee of violating certain prison rules. After Backstrom exhausted his administrative remedies, he filed an application in the defendant district court seeking postconviction relief. His application was denied and we granted appellate review by writ of certiorari. We annul the writ.

I. *Background facts and proceedings.* On June 1, 1990, Backstrom received a disciplinary notice charging him with smuggling and distributing alcohol within the confines of the prison institution. The prison disciplinary committee heard the matter and found Backstrom guilty of violating institutional rule 10 (dealing in dangerous drugs), rule 11 (felonious conduct), rule 16 (unauthorized possession), and rule 20 (possession of drugs or intoxicants). Based on the disciplinary committee's findings, various sanctions were imposed on Backstrom, including a loss of sixteen days good conduct time. In rendering its decision, the disciplinary committee relied on the evidence of the report of R. Schafer (a staff member of the prison), confidential information (which the committee deemed reliable), its assessment of Backstrom's credibility, and Backstrom's refusal to take a polygraph test.

Following the decision of the prison disciplinary committee, Backstrom administratively appealed the ruling first to the warden, and then to the Director of Corrections. *See* Iowa Code § 903A.3(2) (1991). Both appeals were unsuccessful.

Backstrom then filed an application for postconviction relief in district court. *See* Iowa Code §§ 663A.2(6) and 663A.3 (1991).[1] He claimed in the postconviction court that the prison officials denied his due process rights by (1) failing to give him adequate notice of the charges against him, (2) failing to provide counsel substitute to assist him in the proceedings, (3) disciplining him on the basis of insufficient evidence, and (4) failing to apply the proper standard of proof in its determination that he violated rules of prison conduct.

The district court denied Backstrom's application for postconviction relief, and he appealed.

Because Iowa Code section 663A.9 allows an appellate review from a prison disciplinary ruling resulting in a loss of good conduct time (as was the case here) only by a petition for a writ of certiorari, we treated Backstrom's notice of appeal as a petition for writ of certiorari. We granted his petition and issued the writ.

■ We note that certiorari is a procedure to test whether a lower board, tribunal, or court exceeded its proper jurisdiction or otherwise acted illegally. Iowa R.Civ.P. 306. It is an action at law and is not triable here de novo. *Gibb v. Hansen,* 286 N.W.2d 180, 184 (Iowa 1979). When the action alleges violations of basic constitutional safeguards, however, we make our own evaluation of the facts from the totality of the circumstances. *Iowa Freedom of Information Council v. Wifvat,* 328 N.W.2d 920, 922 (Iowa 1983).

II. *Notice of disciplinary charges.* Backstrom first contends that the disciplinary notice of alleged violations that he received from the prison officials failed to meet the notice requirement of the due process clause of the fourteenth amendment of the federal constitution. Specifically, he claims that the notice failed to specify how he smuggled alcohol onto the premises of the institution. He asserts that because the notice included only the time and place of the violation, and not the specific acts that constituted it, he never had a fair opportunity to defend himself. The postconviction court ruled against Backstrom, holding that the notice sufficiently apprised him of the allegations against him. We agree with the court's determination.

■ The due process clause of the fourteenth amendment of the federal constitution

---

1. The 1993 Iowa Code transferred chapter 663A (Postconviction Procedure) to chapter 822. References here are to the 1991 Iowa Code.

requires that prison officials give an inmate subject to discipline proper notice of the charges against him. *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935, 936 (1974). We apply this requirement in light of the totality of the circumstances. *Picard v. State*, 339 N.W.2d 368, 373 (Iowa 1983). Our analysis, reflecting that of the Supreme Court, focuses on whether the prison officials have successfully apprised the inmate of the relevant charges. We look to the time, place and nature of the alleged activity, although we allow officials to delete some facts in the notice to the prisoner if disclosure threatens the security of the institution. For example, prison officials sometimes rely on confidential informants for incriminating information; revelation of certain names or facts may lead the prisoners charged with infractions to retaliate against the informants. *See, e.g., Morris v. Auger*, 414 N.W.2d 858, 861 (Iowa App.1987) (citing *Wolff*, 418 U.S. at 562, 94 S.Ct. at 2978, 41 L.Ed.2d at 954). If prison officials use confidential information in their investigation, however, they must state that fact in the disciplinary notice to the prisoner. *Morris*, 414 N.W.2d at 860.

█ In this case, the disciplinary notice provided Backstrom with the exact dates on which the prison officials found the alcoholic beverage containers on prison property. The notice stated that a visitor of another inmate, Kelly Johnson, had placed the alcohol outside the prison walls. It stated that the trash tractor crew, on which Backstrom had been working as a tractor driver, smuggled the alcoholic beverages inside the prison walls for consumption by inmates. The notice also indicated that the prison officials relied on informants whose identities would remain confidential to protect the security, tranquillity, and good order of the institution.

We believe that the disciplinary notice presented enough information to apprise Backstrom of the charges alleged against him and to give Backstrom an opportunity to defend himself against those charges. Although some of the evidentiary information remained confidential, the notice gave Backstrom adequate detail regarding the time, place and nature of his activities. Therefore,

we conclude that the notice comported with the requirements of due process.

III. *Counsel substitute.* Backstrom claims the disciplinary committee's failure to appoint counsel substitute to represent him violated his due process rights under the fourteenth amendment to the federal constitution. He contends that appointment of counsel substitute would have improved his chances before the disciplinary committee because the counsel substitute would have had access to the confidential information the committee used in its consideration of his case. The postconviction court denied this claim because it believed Backstrom had sufficient ability to represent himself during his disciplinary proceedings. We agree with the court.

█ Inmates in disciplinary proceedings have no right to either retained or appointed counsel. *Wolff*, 418 U.S. at 570, 94 S.Ct. at 2981, 41 L.Ed.2d at 959. The due process clause of the fourteenth amendment, however, affords them the aid of "counsel substitute"—a prison staff member or a selected inmate—to assist them if they lack the ability to read or if they are faced with particularly complex issues. *Id.*

Backstrom argues that the right to counsel substitute "includes the right to have help where [prisoners] cannot help themselves." Therefore, he concludes, due process considerations demand the appointment of a counsel substitute, who Backstrom believes would have access to the confidential information that constituted a part of the evidence the committee concluded inculpated him. Thus, counsel substitute, knowing all the facts, would have the ability to represent Backstrom in the manner he deserves.

█ Backstrom bases his argument on a misconception of the role of counsels substitute. A counsel substitute has no authority to review confidential information in a prison disciplinary proceeding. In *Howard v. State*, 439 N.W.2d 193, 194 (Iowa 1989), we held that neither inmates nor their attorneys have a right to the confidential information used in prison disciplinary proceedings. This principle applies with even stronger force to counsels substitute, because selected inmates or

prison staff members often serve as such counsel. *See Wolff,* 418 U.S. at 570, 94 S.Ct. at 2982, 41 L.Ed.2d at 959. To allow counsel substitute to have access to confidential information in disciplinary proceedings would pose a major threat to the security, tranquillity, and good order of our penal institutions.

Backstrom's claim for counsel substitute also is contrary to a recent ruling of our court of appeals that disciplinary charges which rely on confidential information do not in themselves render a case sufficiently complex to require the appointment of counsel substitute. *Sauls v. State,* 467 N.W.2d 1, 3 (Iowa App.1990). This holding reflects the reasoning in *Wolff.*

■ Here, Backstrom possessed the necessary ability and information to defend himself. The district court found that Backstrom had a high school education plus one year of college and was very articulate. The court also found that the issues in this case were not complex. As discussed above, the disciplinary notice gave enough specificity for Backstrom to claim an alibi or to find witnesses to exculpate him, if he so chose. Even if we characterized the right to counsel substitute as including the right to have help whenever prisoners cannot help themselves—which we decline to do—we believe that Backstrom had all the necessary resources at his disposal. Applying the test we adopted from *Wolff,* we note that Backstrom makes no claim of illiteracy and that the case involves a simple fact dispute. The testimony and the administrative record show that Backstrom displayed a sufficient understanding of his predicament to defend himself in the initial administrative hearing. We therefore find no error in the postconviction court's ruling that Backstrom had no right to a counsel substitute.

IV. *"Some evidence" supporting the disciplinary committee decision.* Backstrom further contends that the disciplinary committee had no real evidence against him because it never specified how he smuggled the alcohol into the prison. The postconviction court denied this claim, noting the extensive evidence produced before the committee.

■ On appellate review of a prisoner's challenge of the evidentiary support of a disciplinary matter, we ask whether the committee had "some evidence" to support its decision. *Wilson v. Farrier,* 372 N.W.2d 499, 501 (Iowa 1985); *see also Walpole v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 365 (1985). Thus, we largely defer to the committee's findings, refraining from a de novo review of the proceedings. *Hoeppner v. State,* 379 N.W.2d 23, 25 (Iowa App.1985). We do require, however, that the inculpatory evidence provide specific details of the activity at issue. *See Freitas v. Auger,* 837 F.2d 806, 811 (8th Cir.1988).

■ Backstrom claims that neither the confidential nor the nonconfidential information in this case constitutes evidence sufficient to meet the "some evidence" test. The nonconfidential information consisted of the information on the disciplinary notice, which alleged the specific dates and place where the acts occurred. It also alleged the identity of the person outside the prison who hid the alcohol for the prisoners to pick up. Backstrom claims that he "doesn't know how he was supposed to have done" the alleged smuggling because the guards would have seen him do it. Backstrom also admitted, however, that it was possible for alcohol to get into the institution.

The committee also based its decision on additional, confidential evidence. The confidential information in substance stated that Backstrom picked up alcohol bottles from outside the prison walls, hid them on the trash tractor, and smuggled them inside the prison. Backstrom asserts that because the disciplinary committee failed to explain to him how he brought the alcohol onto the premises, the committee had no grounds for asserting that Backstrom had committed the act. Even without the details of the confidential information, however, Backstrom knew the notice had charged him with smuggling alcohol into the prison through the prison gates at a time when Backstrom was working on the trash crew. Thus, the officials weighed Backstrom's credibility and his unsubstantiated denial against the credibility and substance of the evidence against him

and reasonably concluded that Backstrom violated the rules of the institution.

We further note that the disciplinary committee had "some evidence" sufficient to discipline Backstrom apart from his willingness and subsequent refusal to take a polygraph test. As our court of appeals has held, such a decision will stand if "there is some evidence, other than the polygraph evidence, which supports the decision of the disciplinary committee." *Bradley v. State,* 473 N.W.2d 224, 226 (Iowa App.1991); *see also Mahers v. State,* 437 N.W.2d 565, 569 (Iowa 1989) (holding that written report of prison official alone provides sufficient basis for disciplinary action); *Wilson v. Farrier,* 372 N.W.2d 499, 501 (Iowa 1985) (holding that testimony of confidential informant alone supports disciplinary action). Here, Backstrom's refusal to take a polygraph test constituted only a small part of the evidence against him.

Upon reviewing the administrative record, therefore, we agree with the postconviction court that the committee had "some evidence" to support its disciplinary action against Backstrom.

V. *"Some evidence" test as a standard of proof before the disciplinary committee.* Backstrom finally contends that the disciplinary committee applied an incorrect standard of proof to his case. He complains that the committee violated his rights under the due process clause of the fourteenth amendment of the federal constitution by applying the "some evidence" standard to the initial determination of whether he violated prison rules. He believes that the committee should have applied a preponderance of the evidence standard. The postconviction court ruled that the committee applied a proper standard.

■ We note initially that our ruling here necessarily falls under the statutory scheme of Iowa Code section 246.505(1), which provides authority for guidelines under which prisons may punish inmates for violations of disciplinary rules. Specifically, section 246.-505(1)(f) requires that the department of corrections "provide procedures . . . for conducting disciplinary hearings. . . ."[2] When a prisoner brings a postconviction relief action alleging violation of due process rights, we review the actions of the prison officials in the context of that statutory grant of authority to the prison and the department of corrections.

■ A. When a court reviews a prison disciplinary action, due process requires the court to affirm the disciplinary committee's action as long as "some evidence" supports the committee's decision. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 365 (1985); *Wilson v. Farrier,* 372 N.W.2d 499, 501 (Iowa 1985) (following *Hill* ). In *Wilson,* we explained the justification for this rule:

> [T]he role of the district court is not to afford a de novo review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by *some* facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise the federal court would assume the task of retrying all prison disciplinary disputes.

*Wilson,* 372 N.W.2d at 502 (quoting *Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir.1974) (emphasis added in *Wilson* )). In addition, as the U.S. Supreme Court noted in *Hill,* "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." 472 U.S. at 456, 105 S.Ct. at 2774, 86 L.Ed.2d at 365. Thus, the justification of the "some evidence" rule rests on the need to balance the prisoners' due process interests against the government's interest in "assuring the safety of inmates and prisoners [and] avoiding burdensome administrative requirements that might be susceptible to manipulation." *Id.* at 454–55, 105 S.Ct. at 2773, 86 L.Ed.2d at 364.

■ B. We further believe the federal constitution requires only that state prison

---

**2.** The 1993 Iowa Code transferred chapter 246 (Department of Corrections) to chapter 904.

Section 246.505(1)(f) now appears as section 904.505(1)(f) in the 1993 Iowa Code.

disciplinary officials apply a "some evidence" standard in their initial determination of disciplinary proceedings. *Hill* merely requires that state officials, charged with decision making in disciplinary hearings, base their decisions on "some evidence." In *Hill*, the court explicitly stated that it would "decline to adopt a more stringent *evidentiary standard* as a constitutional requirement." 472 U.S. at 456, 105 S.Ct. at 2774, 86 L.Ed.2d at 365 (emphasis added). This language clearly refers to the level of evidence used by prison administrators in their factual determinations, not the type of evidence sufficient on judicial review. In *Hill* the Court noted that "although the evidence in this case might be characterized as *meager*, and there was no evidence identifying ... the assailant, the record is not so devoid of evidence that the findings ... were not without support or otherwise arbitrary." *Id.* at 457, 105 S.Ct. at 2775, 86 L.Ed.2d at 366 (emphasis added). *Hill* thus approved the disciplinary committee's failure to use a preponderance of the evidence test.

*Hill* is consistent with the only federal court of appeals decision to directly consider the question. *Goff v. Dailey*, 991 F.2d 1437, 1440–42 (8th Cir.1993). *But see Brown v. Fauver*, 819 F.2d 395, 399 n. 4 (3d Cir.1987) (suggesting the opposite reading in dicta).

The *Goff* court reasoned that "[t]he day to day exigencies of running a prison often require prison officials to deprive inmates of protected liberties based on only 'some evidence.'" 991 F.2d at 1442 (quoting *Ryan v. Sargent*, 969 F.2d 638, 641 (8th Cir.1992)). Although the "some evidence" standard may seem harsh, it nevertheless protects prisoners from arbitrary and retaliatory treatment. *See id.* at 1442; Iowa Code § 246.505(1)(c) (currently codified at Iowa Code § 904.505(c) (1993)) ("Inmates who disobey the disciplinary rules of the institution to which they are committed shall be punished ... according to the following guidelines ... (c) To ensure that disciplinary procedures are fair and that sanctions are not capricious or retaliatory.").

Prison officials rule on hundreds of disciplinary cases every year. We believe that the "some evidence" test is a reasonable accommodation between the rights of prisoners and the rights of the public in resolving these cases. We therefore conclude that the trial court's ruling on this issue was not in error.

VI. *Disposition.* We reject Backstrom's several contentions that the prison disciplinary committee violated his due process rights when it disciplined him for violating prison rules regarding bringing alcohol into the prison. The district court correctly denied his application for postconviction relief.

**WRIT ANNULLED.**

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent. The standard-of-proof issue before this court does not involve a quantitative measure of evidence presented at prison disciplinary hearings. Nor does it involve a qualitative assessment of the reliability of any portion of the evidence. The crux of this issue involves the standard of probability to be applied by the administrative fact finders in finding whether a rule violation has been established. The petitioner has asserted that a standard of probability of guilt that falls below "more probable than not" offends against the hazard of arbitrary decision making condemned in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). I agree.

Although the due process guarantees provided to prisoners in state correctional facilities under the *Wolff* decision are skeletal, they have at their core the prevention of the "hazard of arbitrary decision making." *Id.* at 571, 94 S.Ct. at 2982, 41 L.Ed.2d at 959–60. This court has equated a preponderance-of-evidence standard with a probability assessment of more likely than not. *Carpenter v. Security Fire Ins. Co.*, 183 Iowa 1226, 168 N.W. 231 (1918). In keeping with that proposition, I must assume that the rule that the court approves includes a probability standard of less likely than not. Manifestly, that standard is the equivalent of no standard at all and provides a license for arbitrary decision making. For these reasons, I agree with petitioner's contention that the standard employed by the administrative decision maker in the present case did not meet the

due process standards that *Wolff* made available to prisoners in state facilities.

A more appropriate ground of decision in the present appeal would be to avoid consideration of the constitutional issue through an interpretation of the applicable statutory law. It is provided in Iowa Code section 903A.3(1) (1991) that good time forfeiture may only occur "[u]pon finding that an inmate has violated an institutional rule." I would hold that the necessary finding under this statute must be made on a preponderance-of-evidence or more-likely-than-not standard. The writ should be sustained.