Thomas MARSHALL, Appellant,

v.

STATE of Iowa, Appellee.

STATE of Iowa, Plaintiff,

v.

IOWA DISTRICT COURT FOR JONES COUNTY, Defendant.

No. 93–1339.

Supreme Court of Iowa.

Nov. 23, 1994.

Phillip B. Mears of Mears Law Office, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., and Kristin W. Ensign, Asst. Atty. Gen., for appellee.

PER CURIAM.

In these cross-petitions for writ of certiorari, the State challenges the district court's rejection of the "some evidence" standard applicable in prison disciplinary actions, and the inmate contests the court's willingness to uphold a prison policy of not informing inmates when requested witnesses have refused to testify. For reasons that follow, we sustain the State's writ and annul the prisoner's.

In December 1991, Thomas Marshall and several other inmates were observed fighting in an exercise pen at the Iowa Men's Reformatory. Marshall was injured in the fracas. Prison disciplinary authorities charged him with fighting, disobeying a lawful order, and disruptive conduct. Marshall claimed self-defense.

Before the disciplinary committee met, Marshall asked the prison investigator to obtain a witness statement from inmate Rodriguez, one of the men involved in the fight. The investigator spoke with Rodriguez but Rodriguez refused to comment on the altercation.

The disciplinary committee found Marshall guilty as charged. In addition to losing ninety days of good time, he received 100 days of disciplinary detention and was ordered to pay one-fourth of the medical costs. Marshall unsuccessfully appealed the committee's decision to the warden and the Iowa Department of Corrections.

Marshall then filed an application for post-conviction relief. He had learned that Rodriguez's comment consisted of no comment at all, and charged that the prison's refusal to inform him of that fact effectively denied him of his right to call witnesses. During discovery he also learned that the disciplinary committee had applied a "some evidence" stan-

dard in finding him guilty. He claimed the application of such a standard violated due process.

The district court found that any deprivation Marshall suffered over the prison's policy about witness statements was outweighed by institutional concerns over security. It found merit, however, in Marshall's complaint about the burden of proof applied by the disciplinary committee in its adjudication of guilt. The disciplinary decision was, accordingly, reversed.

■ Both parties sought writs of certiorari, which this court granted. Because of the constitutional due process implications of both issues, our review is de novo. *Mahers v. State,* 437 N.W.2d 565, 567 (Iowa 1989); *Picard v. State,* 339 N.W.2d 368, 373 (Iowa 1983).

■ I. This court has long recognized that minimum requirements of procedural due process must be observed before good time earned by an inmate can be forfeited. *Hrbek v. State,* 478 N.W.2d 617, 619 (Iowa 1991) (citing *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951–52 (1974)). Among the limited rights reserved to inmates in prison disciplinary cases is the right to call defense witnesses. *Id.; Mahers,* 437 N.W.2d at 568. The right to call witnesses, however, does not extend to confrontation or cross-examination. *Id.* Further, the right may be limited, at the discretion of prison officials, where security risks are posed. *Id.*

■ Upon notifying Marshall of the charges against him, prison authorities gave him the opportunity to identify defense witnesses. The question is whether due process dictates disclosure of Rodriguez's silence. At trial, Larry Brimeyer, the administrative law judge who conducted Marshall's disciplinary hearing, testified that Marshall was not informed of Rodriguez's refusal to give a comment because of the security risks posed by such disclosure. Brimeyer stated that prison officials routinely choose not to reveal inmate statements because they are sometimes pre-arranged and, if a prisoner violated such a prearranged plan and the betrayal became known, there may be an attempt to retaliate.

The situation is not unlike that illustrated in *Wolff.* There the Supreme Court reasoned that permitting confrontation and cross-examination of witnesses by inmates, as a matter of course, would lead to havoc inside prison walls. *Wolff,* 418 U.S. at 567–68, 94 S.Ct. at 2980–81, 41 L.Ed.2d at 957–58.

We are persuaded that requiring prison officials to reveal inmate witness's statements, even if such statements say "no comment," would be tantamount to allowing witness confrontation. The likelihood that such a practice could lead to inmate altercations justifies a prison policy denying the right for security reasons. Because the district court reached the same conclusion, we annul Marshall's writ of certiorari.

■ II. On the "some evidence" issue, we note that the district court filed its ruling just prior to our decision in *Backstrom v. Iowa District Court for Jones County,* 508 N.W.2d 705 (Iowa 1993). In *Backstrom,* this court rejected the argument that use of a "some evidence" standard of proof by prison disciplinary committees violates due process. *Id.* at 709–11. Confident that no more stringent standard is required in the prison setting, *see Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 365 (1985), we concluded that the "some evidence" test reasonably protects prisoners from arbitrary and retaliatory treatment while preserving the public's right to institutional order.

Our decision in *Backstrom* is controlling on the State's petition for writ of certiorari. Accordingly, we sustain the writ.

**STATE'S WRIT OF CERTIORARI SUSTAINED; MARSHALL'S WRIT OF CERTIORARI ANNULLED.**

All Justices concur except NEUMAN, J., and CARTER and TERNUS, JJ., who concur in part and dissent in part.

NEUMAN, Justice. (concurring in part and dissenting in part).

I join part I of the court's opinion, but I respectfully dissent from part II.

Further reflection on this court's holding in *Backstrom* leads me reluctantly to con-

clude that it rested on a faulty interpretation of the Supreme Court's opinion in *Superintendent v. Hill.* My concern is fortified by persuasive reasoning found in *LaFaso v. Patrissi,* 633 A.2d 695 (Vt.1993), an opinion issued contemporaneously with—but not cited in—*Backstrom.* The Vermont court's careful analysis of *Hill*'s text reveals that the Court intended the "some evidence" rule to be a standard for reviewing courts, not a standard of proof applicable to disciplinary authorities.

In a telling observation, the *LaFaso* court points to *Hill*'s holding that the "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *LaFaso,* 633 A.2d at 698 (quoting *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774, 86 L.Ed.2d at 365). The Vermont court concludes, and I think rightly so, that the Court could only have intended such a statement to apply to a *judicial* standard of review:

> We find incredible the suggestion that a de novo proceeding intended to determine the guilt or innocence of any individual could dispense with these procedures and retain a semblance of "fundamental fairness."

*Id.*

Moreover, the *LaFaso* court notes, the Court's further conclusion focuses on the level of due process demanded of a reviewing court, not that required of prison officials:

> [T]he fundamental fairness guaranteed by the Due Process Clause does not require *courts* to set aside decisions of prison administrators that have some basis in fact.

*LaFaso,* 633 A.2d at 697 (quoting *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774, 86 L.Ed.2d at 365 (emphasis added)).

*LaFaso* concludes that the "safest reading" of *Hill*'s somewhat ambiguous analysis is that it does not purport to answer the question of standard of *proof* (as opposed to standard of *review*) one way or the other. *Id.* at 698. Because a "some evidence" standard would "allow[ ] imposition of discipline in the face of probable innocence," *id.* at 699, it held that "due process requires prison authorities to prove inmate disciplinary in-

fractions by a preponderance of the evidence." *Id.* at 698.

This same conclusion was reached and these same concerns expressed, in different terms, by the dissent filed in *Backstrom.* See *Backstrom,* 508 N.W.2d at 711 (Carter, J., dissenting). I failed to heed them then. I do so now.

CARTER and TERNUS, JJ., join this concurrence in part and dissent in part.