**Melvin KEY, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 96–614.

Supreme Court of Iowa.

April 22, 1998.

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Forrest Guddall, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Applicant, Melvin Key, an inmate at the Iowa State Penitentiary (ISP), was found guilty by a prison disciplinary committee of violating certain prison rules. After exhausting his administrative remedies, Key filed an application for postconviction relief in district court. *See* Iowa Code §§ 822.2(6), 822.3 (1995). The district court denied Key relief and he appealed. We affirm.

## I. Background facts and proceedings.

On January 28, 1995, Key was removed from the general population at ISP and placed in investigative segregation for alleged violations of ISP rules. He remained in that status for thirty-three days until March 2 when prison officials issued a disciplinary report against him, alleging he had violated various prison rules related to his actions in asking another inmate for oral sex, sending red star envelopes to that same inmate,[1] and attempting to make arrangements for that inmate to give Key his television set. As a result of the disciplinary report being issued against him, Key was placed in sum-

---

1. "Red star" envelopes are specially marked envelopes which inmates may purchase in order to send confidential legal correspondence to other inmates within the ISP complex. The envelopes are valuable because they must be paid for and are the only means by which inmates send confidential legal material within the system.

mary segregation pending a disciplinary hearing concerning the allegations.[2]

On March 29, 1995, a disciplinary hearing was held before a prison disciplinary committee concerning Key's alleged violations of prison rules. The disciplinary committee found Key guilty of violating disciplinary rule thirty-three (bartering/selling goods)[3] and rule forty-three (attempt or complicity),[4] and sanctioned Key to ninety days of restriction to a cell in maximum security, but no loss of good conduct time, nor loss of credit for time served.

After exhausting his administrative remedies, Key filed an application for postconviction relief in district court challenging the committee's ruling and asserting three grounds for relief: (1) inadequate notice of the nature and time of alleged violations; (2) improper reliance on unreliable confidential information; and (3) improper detention in investigative segregation in excess of thirty days, in violation of ISP policy.

After a trial, the district court denied Key's application for postconviction relief. Key appealed and raises the same issues before us.

## II. Standard of review.

■ Key contends that the disciplinary notice does not comport with due process of law under the Fourteenth Amendment to the United States Constitution. He further contends that the prison disciplinary committee's decision was not supported by "some

evidence." Since these claims involve constitutional challenges, we review them "in light of the totality of the circumstances and the record upon which the postconviction court's ruling was made." *Giles v. State*, 511 N.W.2d 622, 627 (Iowa 1994). This is the functional equivalent of de novo review. *James v. State*, 541 N.W.2d 864, 869–70 (Iowa 1995); *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). Since Key does not raise a constitutional challenge regarding the length of his confinement in investigative segregation, our review on this issue is for errors of law. *Harpster v. State*, 569 N.W.2d 594, 596 (Iowa 1997).

## III. Notice of disciplinary charges.

■ Key first contends that the disciplinary notice did not specify the dates and times of the alleged disciplinary violations. He therefore asserts that he had insufficient information to prepare a defense against the charges and thus was deprived of his right to due process of law under the Fourteenth Amendment to the United States Constitution. The district court rejected Key's contentions on this issue, holding that the notice sufficiently apprised him of the alleged violations.

■ The Due Process Clause of the Fourteenth Amendment requires that prison officials give an inmate subject to discipline proper notice of the charges against him. *Backstrom v. District Ct.*, 508 N.W.2d 705, 707–08 (Iowa 1993) (citing *Wolff v. McDon-*

---

**2.** One distinction between investigative segregation and summary segregation appears to be one of timing. Both terms describe a type of lockup status, but the lockup is called investigative segregation prior to a disciplinary report being filed against the inmate and is called summary segregation after a report is issued and before a hearing is held. Another distinction relates to the type of property an inmate is allowed to have with respect to each type of segregation. *See Losee v. Nix*, 842 F.Supp. 1178, 1181 (S.D.Iowa 1994).

**3.** ISP Disciplinary rule thirty-three provides as follows:

> 33. *Bartering, Selling Goods, etc.:*
> An inmate commits an offense under this subsection when the inmate is in violation of laws, rules, or policies.

a. Barters, loans, gives, exchanges, accepts, sells or buys things of value, including but not limited to, those items sold in the commissary, clothing, housing furnishings, art and craft items; or
b. Transfer or attempts to transfer or accepts transfer of funds from one inmate to another inmate or an inmate's family members, correspondents, or friends; or
c. Agrees to perform or receive services, including legal, for anything of value.

**4.** ISP Disciplinary rule forty-three provides as follows:

> 43. *Attempt or Complicity:*
> An inmate commits an offense under this subsection when the inmate attempts to commit any of the above offenses or is in complicity with others who are committing or attempting to commit any of the above offenses.

*nell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935, 936 (1974)). Specifically, "the notice must contain (1) the date, general time, and location of the incident; (2) a general description of the incident giving rise to the charges and citation to the rules allegedly violated; and (3) the identity of other persons involved in the incident." *Shortridge v. State*, 478 N.W.2d 613, 615 (Iowa 1991). "The adequacy of the notice hinges on whether it allows the inmate to 'marshal the facts' and prepare a defense." *Freitas v. Auger*, 837 F.2d 806 (8th Cir.1988); *accord Love v. State*, 551 N.W.2d 66, 69 (Iowa 1996). In examining this issue, we consider such factors as the time, place and nature of the alleged activity. *Backstrom*, 508 N.W.2d at 708.

▇▇▇ With respect to the information that must be included in the disciplinary notice, we have stated that prison officials may delete certain facts from the notice if disclosure would threaten the security of the institution. *Id.* (citing *Morris v. Auger*, 414 N.W.2d 858, 861 (Iowa App.1987)). The decision whether to disclose the identity of confidential informants is a matter of discretion for prison officials. *Howard v. State*, 439 N.W.2d 193, 194 (Iowa 1989). If facts are deleted from the notice because of security concerns, prison officials must state this fact in the disciplinary notice. *Backstrom*, 508 N.W.2d at 708.

Our review of the disciplinary notice issued to Key causes us to conclude that the notice contained sufficient information to apprise Key of the charges against him and to give him an opportunity to defend himself against those charges. First, the notice informed Key that the charges were based on confidential information and that the name(s) of the confidential informants would remain so because of safety concerns for other inmates.[5] Second, the notice also identified the victim's name and thus Key knew who was making the complaints against him.

Third, the notice was sufficiently detailed as to the date or general time frame as to when each alleged violation occurred. For instance, the notice indicated that the inci-

dent with respect to the television occurred on January 8, 1995. The notice also stated that Key sent red star envelopes to the victim for a period of ninety days when the victim was in lockup. Key obviously knew when this ninety-day period was, as evidenced by the fact that he sent the envelopes to the victim in lockup. Additionally, the notice stated that in mid-August 1994, Key asked the victim for sex.

The fact that the notice did not specify the exact date of each violation does not mean that the notice is deficient. *See Freitas*, 837 F.2d at 809 (notice charging inmate with planning an escape during a sixty-day period was sufficient); *James*, 541 N.W.2d at 871 (notice charging inmate with involvement in gang activity during four-month period was sufficient); *Hair v. State*, 401 N.W.2d 198, 199–200 (Iowa App.1986) (notice charging inmate with assault and other violations during six-month period was sufficient). This is especially true where, as here, certain information was omitted from the notice in order to protect the identity of the confidential informants. *See Backstrom*, 508 N.W.2d at 708 (confidential information may be omitted if disclosing such information would threaten prison security). Indeed, if the notice had contained information that was too specific with respect to the alleged violations, then the identity of the confidential informants might have been disclosed.

As a whole, we believe that the information listed in the notice was sufficient to inform Key of the charges against him to allow him to prepare a defense. We thus conclude that the notice satisfies the requirements of due process with regard to notice of alleged prison disciplinary violations. The district court properly refused to grant Key postconviction relief on this issue.

### IV. Whether adequate evidence supports the committee's decision.

▇▇▇ Key further contends that the disciplinary committee improperly relied upon confidential information in finding him guilty of violating prison rules. He claims that the

---

5. The disciplinary notice stated "[t]he name(s) of confidential informants will remain so, as to re-

lease them could cause injury to another inmate."

confidential information in this case does not meet the "some evidence" test because it was unreliable and not sufficiently corroborated. As support for this argument, Key points out that the committee rejected some of the confidential information by finding him innocent of several charges. The district court rejected these claims.

■■■■■ On appellate review of a prisoner's challenge to the evidentiary support of a disciplinary matter, we ask whether the committee had "some evidence" to support its decision. *Id.* at 709. Under this standard, " 'the relevant [legal] question is whether there is *any* evidence in the record' that could support the disciplinary committee's decision." *James,* 541 N.W.2d at 874 (quoting *Walpole v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 365 (1985)). Confidential statements of informants standing alone are sufficient under the "some evidence" standard to support a prison disciplinary committee's decision. *Id.* (citing *James v. State,* 479 N.W.2d 287, 291 (Iowa 1991)). In considering this issue, "we largely defer to the committee's findings, refraining from a de novo review of the proceedings." *Backstrom,* 508 N.W.2d at 709.

Although prison officials may rely on confidential information as a matter of discretion, we have stated:

> When an inmate is disciplined on the basis of confidential information, however, his interest in a fair hearing requires that there be some indication of the confidential informant's reliability. *Howard,* 439 N.W.2d at 195. To that end, there must be sufficient information in the record to convince a reviewing authority that the disciplinary committee undertook such inquiry and correctly concluded that the confidential information was credible and reliable. *Id.*; *Niday,* 353 N.W.2d at 94. The reliability of confidential information may be established by *inter alia, in camera* review of material documenting an investigator's assessment of the credibility of a confidential informant.

*James,* 479 N.W.2d at 291 (citations omitted).

Based on our *in camera* review of the confidential statements, we conclude that the disciplinary committee's decision finding Key guilty of violating prison rules is supported by "some evidence" in the record.·

In its written decision, the committee stated that it relied on confidential statements of the victim, statements of confidential informants, and the statement of prison captain Burton,[6] and that it found this information to be reliable. The committee also stated in its decision that Key did not request witnesses to appear at the hearing. We believe that the committee's decision shows that it weighed Key's unsubstantiated denial against the credibility and substance of the evidence against him and reasonably concluded that Key committed the acts with which he was charged.

The district court's ruling reveals that it likewise weighed the credibility and reliability of the confidential information, stating:

> [T]he confidential information contains a great many details which provide a cogent and consistent pattern of conduct by the Applicant and other inmates. There appears to be no bias motivating the source of the confidential information. No undue influence was exercised by institutional officials and the source of the confidential information did not profit or benefit. The Court concludes that the confidential information is credible and internally reliable.

We believe the district court's statement accurately summarizes the evidence supporting the committee's findings and we adopt it as our own.

■■■■ We also point out that a prison disciplinary committee has the right to rely on a confidential informant's statements and to disbelieve an inmate's denials, and need not state why it believes the informant rather than the inmate. *Id.* We therefore reject Key's contention that the disciplinary committee's decision is somehow infirm because the decision does not identify what confidential facts the committee accepted and what facts the committee rejected.

---

**6.** The committee's reference to captain Burton's statement apparently refers to Burton's statements listed in the disciplinary notice written by him.

We conclude that the confidential statements were reliable and credible and that there was "some evidence" to support the disciplinary committee's findings that Key violated prison disciplinary rules. The district court's conclusion on this issue is affirmed.

### V. Detention in investigative segregation.

In his final argument on appeal, Key asks us to expunge his disciplinary report because he was held in investigative segregation for thirty-three days, three days longer than allowed by ISP Institutional Policy No. 85–7–16–651 BR. That prison policy states that prison officials may place an inmate in investigative segregation, but that this status is not considered disciplinary and *should not last beyond thirty days without written consent of the warden.* (Emphasis added.) The warden did not file a written consent concerning Key's detention in investigative segregation.

During oral argument, the parties acknowledged that this policy is not one adopted by the director of corrections pursuant to Iowa Code chapter 903A and does not appear in the ISP rulebook. Instead, this policy was implemented by the warden at ISP.

With respect to this issue, Key does not contend that prison officials violated his constitutional rights by holding him in investigative segregation three days longer than the period allowed by the policy. He further concedes that he suffered no prejudice as a result of his detention. Key simply contends that prison officials should follow the policies they implement.

We find no merit in this assignment of error. With respect to this issue, the district court stated the following:

> The written policy contains no statement of a remedy if the inmate is held in investigative segregation more than 30 days without official action. The Applicant fails to show to the Court any injury, harm, or prejudice in being kept in this status for 33 days. Additionally, there is no showing that the institution undertook to hold the Applicant in investigative segregation as a pretext. Presumably, Key was kept at this status while the investigation was ongoing. Because no injury or harm can be shown by the Applicant, and additionally, because the institution appears to have acted reasonably, the Court concludes Applicant's . . . ground for relief has no merit and shall be denied.

We believe that the district court's statement accurately disposes of this issue and we find it unnecessary to add further comment. We also reject Key's contention that the ISP policy is analogous to Iowa's rule of criminal procedure concerning deadlines for filing of trial indictments. *See* Iowa R.Crim. P. 27(2)(a). This rule is applicable to criminal proceedings, whereas prison disciplinary matters are civil in nature. *See Mabrier v. State,* 519 N.W.2d 84, 85 (Iowa 1994).

### VI. Disposition.

We conclude that the disciplinary notice was sufficient to apprise Key as to the general time frame during which the alleged disciplinary violations occurred so as to allow him to present a defense. We further conclude that there was "some evidence" in the record to support the committee's decision finding Key guilty of violating the disciplinary rules listed in the disciplinary notice. Lastly, we conclude that Key suffered no prejudice from his confinement in investigative segregation for a period in excess of that allowed by prison policy. The district court properly denied Key's application for postconviction relief. Accordingly, we affirm.

**AFFIRMED.**

All justices concur except TERNUS, J., who concurs in the result.