# IN THE SUPREME COURT OF IOWA

No. 15–0948

Filed December 23, 2016

Amended February 27, 2017

**STATE OF IOWA,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR JONES COUNTY,**

Defendant.

---

Certiorari to the Iowa District Court for Jones County, Lars G. Anderson, Judge.

Iowa Department of Corrections appeals district court's ruling reversing agency decision requiring inmate convicted of domestic abuse assault to participate in sex offender treatment program. **WRIT SUSTAINED AND CASE REMANDED.**

Thomas J. Miller, Attorney General, and John B. McCormally, Assistant Attorney General, for plaintiff.

Mark Smith, State Appellate Defender, and John Bishop, Cedar Rapids, until withdrawal, and then Anthony Burton Irvin pro se.

**WATERMAN, Justice.**

In this appeal, we must decide whether the Iowa Department of Corrections (IDOC) violated an inmate's rights by requiring him to participate in the Sex Offender Treatment Program (SOTP). The inmate pled guilty to domestic abuse assault in a plea bargain that dismissed a related sex abuse charge. The IDOC initially relied on the dismissed sex abuse charge and the victim's detailed, written statement included in a police report to refer him for mandatory SOTP. An administrative law judge (ALJ) upheld that determination following an evidentiary hearing based on the inmate's admission that he assaulted his girlfriend during oral sex and the victim's statement. The district court reversed based on an unpublished, nonprecedential decision, *Lindsey v. State*, No. 13–2042, 2015 WL 568560 (Iowa Ct. App. Feb. 11, 2015), which held the IDOC cannot use unproven charges to require SOTP. We granted the IDOC's request for a writ of certiorari.

For the reasons explained below, we hold the IDOC may rely on the victim's written statement in a police report for the initial classification requiring SOTP, provided the inmate is afforded due process, including an evidentiary hearing to challenge that classification. The ALJ, in turn, may uphold the classification based on the inmate's own testimony admitting to a sexual component to the assault, along with other evidence, including hearsay such as the victim's detailed account. Accordingly, we sustain the writ, reverse the judgment of the district court, and remand the case to reinstate the IDOC's decision requiring this inmate's participation in the treatment program.

## I. Background Facts and Proceedings.

Anthony Irvin is an inmate at Anamosa State Penitentiary under the custody of the IDOC serving a prison sentence for domestic abuse

assault following his guilty plea. The victim was his live-in girlfriend. The minutes of testimony, which incorporated by reference the police report with the victim's detailed account, alleged that at 8:30 p.m. on October 28, 2012, Irvin became angry upon finding calls to another man made from his girlfriend's phone. Irvin accused her of infidelity. When she attempted to explain, he grabbed her by the throat and threw her across the room. Irvin then began smoking crack cocaine and watching porn. About 1:30 a.m., he forced his girlfriend to smoke crack and perform oral sex on him. According to her statement, at around 3:30 a.m., she told him she did not want to continue. Irvin ordered her to keep going. She stopped and pulled away. Irvin again grabbed her by the throat. She struggled, and Irvin put her in a headlock and strangled her until she passed out. When she awoke, she felt dizzy and found she had urinated on herself. She began sobbing, and Irvin threatened to kill her before she could call the police or neighbors. She laid in bed until morning, when she went to work. The police were contacted and came to her workplace. Her statement and photos of her injuries were taken that day. Police arrested Irvin at their home.

The State charged Irvin with two counts: (1) domestic abuse assault by knowingly impeding the normal breathing or circulation of the blood of another person in violation of Iowa Code section 708.2A(2)(*d*) (2013); and (2) sexual abuse in the third degree for performing a sex act by force in violation of section 709.4. At that time, Irvin also had prior charges of domestic abuse assault and sexual abuse in the third degree pending for another incident with a different victim.

On August 20, 2013, the State reached a plea agreement with Irvin, who pled guilty to two counts of domestic abuse assault in violation of section 708.2A(2)(*d*) in exchange for the dismissal of both

charges of sexual abuse in the third degree. The court sentenced Irvin to an indeterminate period of incarceration not to exceed two years on each offense, to be served consecutively, and imposed a $625 fine. Irvin was also sentenced on two unrelated theft charges. Irvin's cumulative sentence totaled six years. The sentencing order recommended that Irvin be enrolled in a batterer's education treatment course. The district court made no finding that the crimes to which Irvin pled were sexually motivated and did not require Irvin to register as a sex offender.

On October 14, shortly after Irvin arrived at the IDOC's Mount Pleasant Correctional Facility (MPCF), his counselor, Kasey Bean, sent an email to Sean Crawford, the director of the SOTP. Bean's email stated that based on Irvin's original sexual abuse charge, she "believe[d] he may be eligible for SOTP." Crawford responded a few weeks later, stating, "Offender's file has been reviewed and it is my opinion there is a sexual component involved in his current conviction. DOC will require SOTP."

On December 16, the IDOC notified Irvin that he had been classified as an offender required to complete sex offender treatment. The notice stated the classification "*may affect [his] future accrual of earned time and tentative discharge date pursuant to Iowa Code § 903A.2(1)(a).*" The notice set forth the reasons for his classification in a section entitled, "Classification Committee Justification/Evidence":

> Offender Irvin is currently incarcerated on charges of domestic abuse and 3rd degree theft. Originally charged also with sex abuse 3rd, he ple[d] to the current charges. Along with beating his victim up, he forced the female to perform oral sex on him. Offender Irvin has never completed any type of sex offender treatment program and because of the sexual component to his crime the DOC/MPCF will require he do so.

The notice listed the evidence relied upon by the IDOC for Irvin's classification, including the (1) program records, (2) email by Sean Crawford, (3) trial information, (4) police report, and (5) minutes of testimony. The police report was attached to the minutes and noted that Irvin "beat his victim up" and "force[d] her to perform oral sex." The police report quoted a detailed statement from the victim taken down the day after the assault. The victim's account was also quoted in the minutes. Finally, the notice informed Irvin "that an in-person or telephonic hearing on your appeal of the sex offender treatment program requirements will be held on Wednesday, January 8," before an ALJ. The notice stated that "[a]ll documents or other exhibits that you want considered at the hearing" must be submitted two business days before the hearing, and if Irvin did not appear, a judgment would be entered against him. At the bottom of the notice was a section an offender could sign to waive the hearing. On December 17, Irvin signed to waive the hearing.

In February of 2014, Irvin was transferred from the MPCF to Anamosa State Penitentiary. On April 14, Irvin wrote a letter to John Baldwin, then director of the IDOC, and Jason Carlstrom, then chair of the Iowa Board of Parole. Irvin asserted that he should not be referred to SOTP because he "had never been convicted of a sex charge, only accused of one." He alleged the prosecutor dismissed the sex counts because, during the course of trial preparation, the prosecutor determined those charges to be unfounded. Irvin noted neither the sentencing order nor the plea agreement recommended that he participate in SOTP, only that he participate in batterer's education. Sheryl Dahm, then assistant deputy director at the IDOC, responded to

Irvin's letter on April 22, stating that Irvin's classification was based on IDOC policy.

In June, Irvin received another classification notice. The notice mentioned that, due to an error, Irvin's accrual of earned time had not been halted since the first December classification notice. The June notice gave Irvin another opportunity for an ALJ hearing scheduled for July 16. Irvin acknowledged this notice, and this time did not waive the hearing. At the hearing, Irvin submitted his affidavit; a copy of the plea agreement; and a copy of *Dykstra v. Iowa District Court*, 783 N.W.2d 473 (Iowa 2010). The hearing was unreported.

On July 25, the ALJ affirmed the IDOC's classification decision. The ALJ specifically found that due process requirements for the classification had been met: Irvin had been given notice of the hearing and presented evidence, the ALJ provided an explanation for the reasons behind the classification, and the ALJ "was not involved in the [initial] classification decision at issue, so he [could] be an impartial decisionmaker in this matter." The ALJ examined the two domestic abuse convictions, one arising out of Irvin's altercation with his girlfriend and the other arising from the separate incident with a different victim. The ALJ determined the allegations in the separate incident were "not sufficient to find that IRVIN needs SOTP" because the violence was unrelated to a sex act. The ALJ found the other charge involving Irvin's girlfriend required SOTP because "[t]he evidence in the record indicates that IRVIN's behavior shows that he currently suffers from a problem for which treatment is needed to rehabilitate him or that such treatment is needed to protect the community from him."

The ALJ determined that requiring SOTP would not violate Irvin's plea agreement or sentencing order because both "were silent about

SOTP" and the IDOC retains the authority to establish treatment program policies for offenders. The ALJ rejected Irvin's claim that the prosecutor had dropped the sex charge as unsubstantiated. The ALJ noted Irvin produced no evidence to support that assertion, such as the deposition transcripts that he claimed existed. The ALJ observed the plea agreement stated that "charges could be brought back if IRVIN raised challenges to the plea agreement." In the ALJ's view, this showed the prosecutor "still believed the charges could reasonably be brought again if need be." Finally, the ALJ weighed the victim's detailed statement together with Irvin's testimony on his version of events. The ALJ found the victim's statement to be "credible" after testimony from Irvin that the victim "did not have to fabricate a story if she wanted him to leave because she could have simply told him to leave the house." In the ALJ's view, Irvin "indicate[d] that [the victim] did not have a reason to fabricate a story about what IRVIN did to her." The ALJ also concluded that even under Irvin's version of events, the conviction for domestic abuse still had a sexual component, and thus, Irvin should be required to complete SOTP:

> IRVIN's version of events was that he pushed the victim away by the throat when she bit his penis while performing oral sex. As noted above, he pleaded guilty to "knowingly" impeding her airway. Thus, his plea indicated that he did not merely react, but purposely pushed her hard in the neck. According to IRVIN his action was because the sexual encounter he was having did not go as he expected. Reacting with violence during a sex act also raises the types of concerns that can properly be addressed in SOTP. The ALJ finds that even under IRVIN's version of events (as modified by his guilty plea), he should still be required to take SOTP.

On July 28, Irvin appealed the ALJ's determination to the warden by completing the SOTP appeal form. *See* Iowa Code § 903A.3(2) ("The

orders of the administrative law judge are subject to appeal to the superintendent or warden of the institution, . . . who may either affirm, modify, remand for correction of procedural errors, or reverse an order."). Irvin claimed the SOTP classification violated his procedural due process rights. On August 4, the warden affirmed the decision of the ALJ, ruling due process had been followed and the ALJ "considered [Irvin's] statement and the evidence when making this decision."

Irvin filed an application for postconviction relief under Iowa Code section 822.2(1)(*f*) and (*g*) in the Iowa district court. Irvin claimed he was denied due process and equal protection of the law because the ALJ relied on the unproven factual allegations. The district court held a hearing on April 15, 2015. On May 20, the district court found that it was error for the ALJ to rely on "unadmitted minutes of testimony and police reports in making its recommendation." The district court relied on the unpublished decision of *Lindsey*, in which a divided Iowa Court of Appeals concluded the IDOC lacked authority to rely on unproven facts to require participation in SOTP. 2015 WL 568560, at *5. In addition, the district court relied on *In re Detention of Stenzel*, 827 N.W.2d 690, 708–10 (Iowa 2013), which disallowed expert testimony in a district court civil commitment trial when the expert relied on unproven facts in the minutes of testimony to support his opinion that the individual was a sexually violent predator. The district court concluded because the IDOC had improperly relied on the minutes in making the initial recommendation, "[n]o hearing should have occurred in the first place."

The IDOC sought a writ of certiorari, which we granted. We retained the case.

**II. Standard of Review.**

"We normally review certiorari actions for correction of errors at law." *State v. Iowa Dist. Ct.,* 801 N.W.2d 513, 517 (Iowa 2011). "Generally, postconviction relief proceedings are reviewed for correction of errors at law." *Dykstra,* 783 N.W.2d at 477. "We review questions of statutory construction, including . . . the proper interpretation of Iowa Code section 903A.2, for errors at law." *Id.* We review de novo the evidence relevant to a constitutional claim. *Iowa Dist. Ct.,* 801 N.W.2d at 517.

**III. Analysis.**

We must decide two related questions: (1) whether the IDOC properly relied on the victim's detailed statement to initially refer Irvin for SOTP; and (2) whether the IDOC properly required Irvin's participation in SOTP based on the ALJ's finding that he admitted at his evidentiary hearing to assaulting his girlfriend during a sex act and based on the victim's statement, police report, and Irvin's guilty plea. We first address the IDOC's broad discretion to refer inmates to SOTP and require their participation. We next review the permissible uses by the IDOC of a victim's statement in a police report. We conclude that the IDOC properly rejected Irvin's challenges to his initial referral to SOTP and the decision to mandate his participation following an evidentiary hearing.

**A. The IDOC's Broad Discretion to Require SOTP.** "SOTP was established for bona fide rehabilitative purposes." *Id.* at 519.

> There is a high rate of recidivism among untreated sex offenders and a broad range of agreement among therapists and correctional officers that clinical rehabilitation programs "can enable sex offenders to manage their impulses and in this way reduce recidivism."

*Id.* at 519 (quoting *McKune v. Lile,* 536 U.S. 24, 33, 122 S. Ct. 2017, 2024, 153 L. Ed. 2d 47, 56–57 (2002)).

Iowa Code chapter 903A allows an inmate to "earn a reduction of sentence" based on good conduct and satisfactory participation in treatment programs identified by the IDOC director:

> An inmate of an institution under the control of the department of corrections . . . is eligible for a reduction of sentence equal to one and two-tenths days for each day the inmate demonstrates good conduct and satisfactorily participates in any program or placement status identified by the director to earn the reduction. The programs include but are not limited to the following:
>
> . . . .
>
> (4) A treatment program established by the director.

Iowa Code § 903A.2(1)(*a*)(4). Sex offender treatment is specifically addressed as follows: "However, an inmate required to participate in a sex offender treatment program shall not be eligible for a reduction of sentence unless the inmate participates in and completes a sex offender treatment program established by the director." *Id.* § 903A.2(1)(*a*). An inmate who fails to participate in sex offender treatment required by the IDOC risks losing his or her ability to obtain an earlier release from prison by accumulating earned time.

Iowa Code section 903A.4 authorizes the IDOC to develop policies and procedures to implement these treatment programs with earned-time incentives:

> The director of the Iowa department of corrections shall develop policy and procedural rules to implement sections 903A.1 through 903A.3. The rules may specify disciplinary offenses which may result in the loss of earned time, and the amount of earned time which may be lost as a result of each disciplinary offense. The director shall establish rules as to what constitutes "*satisfactory participation*" for purposes of a reduction of sentence under section 903A.2, for programs that are available or unavailable.

(Emphasis added.)

The IDOC promulgated a policy that requires the department to review and refer offenders to the SOTP director who "are not incarcerated for a Sex Crime but have a sexual component to their crime." Iowa Dep't of Corr., Policy & Procedure, Sex Offender Program Referrals, OP–SOP–08 (2014). The director then reviews the "current conviction and circumstances of [the] offense" as well as the "minutes of testimony/court documents" and "prior arrests/convictions" to determine whether he or she will refer an offender to SOTP. *Id.* From there, if the inmate has not been convicted of a sex offense, the matter proceeds to a hearing before an ALJ. If the ALJ upholds the classification requiring SOTP, the "inmate will no longer accrue any earned time after refusing to attend SOTP, but will not lose any previously accrued earned time." *Dykstra*, 783 N.W.2d at 478.

The "legislative purpose of earned-time credits . . . is to encourage prisoners to follow prison rules and participate in rehabilitative programs." *Kolzow v. State*, 813 N.W.2d 731, 738 (Iowa 2012). "[C]ourts are obliged to grant prison officials a wide berth in the execution of policies and practices needed to maintain prison discipline and security." *Office of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 14 (Iowa 2012) (quoting *Citizens' Aide/Ombudsman v. Grossheim*, 498 N.W.2d 405, 407 (Iowa 1993)). We addressed the IDOC's "broad discretion" to require SOTP for inmates convicted of nonsex offenses in *Dykstra*. 783 N.W.2d at 479. John Dykstra pled guilty to a charge of simple assault after he was initially charged with third-degree sexual abuse. *Id.* at 476. The IDOC recommended Dykstra participate in SOTP based on the circumstances underlying the assault, as gleaned from the minutes of testimony attached to the charging information. *Id.* Because Dykstra

refused to attend SOTP, the IDOC determined he was no longer eligible to receive earned-time credit. *Id.* at 477. Dykstra argued the IDOC lacked authority to require SOTP because he was not convicted of a sex offense. We disagreed, noting that "[t]he statute does not set criteria for which inmates will be 'required to participate.' " *Id.* at 478–79 (quoting Iowa Code § 903A.2). We elaborated,

> The broad discretion granted to IDOC does not limit application of section 903A.2 to inmates serving sentences for particular crimes or crimes labeled as "sex offenses." There is no statutory limitation that would prevent IDOC from recommending SOTP for an inmate convicted of a crime that is not facially considered a sex offense where the factual circumstances of the crime are of a sexual nature.

*Id.* at 479. We held that the IDOC had authority to stop *all* accrual of earned time for refusal to participate in SOTP, even on sentences that were not served for a sex-offense conviction. *Id.* ("Section 903A.2 does not require that the 'sentence' be one connected to the reason IDOC has required the inmate to attend SOTP."). Thus, so long as SOTP was related to a "problem currently suffered" by the offender, the IDOC had statutory authority to require SOTP and halt the accrual of earned time. *Id.* at 479–80 (quoting *State v. Valin*, 724 N.W.2d 440, 447 (Iowa 2006)).

We emphasized in *Dykstra* that the IDOC's classification procedures must satisfy the Due Process Clauses of the Iowa and Federal Constitutions. *See id.* at 483. We acknowledged a liberty interest at stake in the initial SOTP classification because of "[t]he stigmatizing consequence of being labeled as a sex offender, the mandatory behavior modification treatment, and the revocation of the inmate's ability to earn any time should he refuse to participate." *Id.* We adopted the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963,

41 L. Ed. 2d 935 (1974), as a prerequisite for mandating SOTP. *Id.* at 482.

In *Wolff*, the Supreme Court evaluated what process was due in a proceeding to forfeit an inmate's good-time credits. 418 U.S. at 563–71, 94 S. Ct. at 2978–82, 41 L. Ed. 2d at 955–59. In *Dykstra*, we summarized the *Wolff* requirements as follows:

> (1) advance written notice of the claimed violation, (2) a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken, (3) a hearing, at which the inmate must be allowed to call witnesses and present documentary evidence, as long as it would not be unduly hazardous, and (4) a sufficiently impartial decisionmaker.

783 N.W.2d at 482. We concluded the due process required by *Wolff* was satisfied when the inmate had been tried and convicted of a sex offense. *Id.* at 484; *see also Holm v. Iowa Dist. Ct.*, 767 N.W.2d 409, 418 (Iowa 2009) (concluding mandatory SOTP did not violate due process when inmate was convicted of third-degree sexual abuse). However, for inmates who were not convicted of a sex crime, the IDOC must satisfy the *Wolff* procedural safeguards. *Dykstra*, 783 N.W.2d at 484. We held the IDOC violated Dykstra's due process rights by requiring his participation in SOTP based on "unadmitted factual allegations that did not result in a sex-offense conviction" without the required procedural safeguards. *Id.* at 483. Specifically, Dykstra was not provided with "advance written notice, a written statement of reasons and findings by the factfinder, and a neutral factfinder." *Id.*[1]

---

[1] We applied *Dykstra* in the companion cases of *Reilly v. Iowa District Court*, 783 N.W.2d 490 (Iowa 2010), and *Waters v. Iowa District Court*, 783 N.W.2d 487 (Iowa 2010). In *Waters*, we held that an inmate could be classified for SOTP even though at the time of classification he was only serving a sentence for operating while intoxicated (OWI) because he had "entered prison to serve two sentences: the five-year OWI sentence and a two-year sentence for

In contrast, Irvin was provided with the procedural protections required by *Dykstra*. *See id.* Therefore, we turn to whether the IDOC may rely on the victim's detailed statement in the police report to initially classify Irvin for SOTP and in the subsequent review by the ALJ.

**B. The IDOC's Use of the Victim's Statement.** The district court, citing *Lindsey*, ruled the IDOC erroneously relied on unproven facts in the minutes of testimony when initially referring Irvin to SOTP. Donzell Lindsey was originally charged with first-degree burglary, domestic assault, and third-degree sexual abuse. *Lindsey*, 2015 WL 568560, at *1. He pled guilty under a plea agreement to domestic abuse and burglary, with the sexual abuse charge dismissed. *Id.* The IDOC classified Lindsey for SOTP, concluding there was a "sexual component" to his crimes based on the facts alleged in the minutes of testimony. *Id.* The district court vacated that decision and ordered the IDOC to restore his earned time. *Id.* A panel of the court of appeals affirmed over the dissent of one judge. *Id.* at *6. The majority held the IDOC lacked the authority to rely on the minutes of testimony when classifying offenders, stating, *"Dykstra* does not extend [IDOC's] authority to promulgation of policies and rules permitting the consideration of unproven and unadmitted 'facts.' " *Id.* at *3. The

---

assault with intent to commit sexual abuse." 783 N.W.2d at 489. In *Reilly*, we determined that removing an inmate from SOTP implicated a similar liberty interest—the right to accrue earned time. 783 N.W.2d at 495. However, we gave less weight to the inmate's liberty interest because removal was "a discretionary decision by prison officials . . . whereas the initial inmate classification addressed in *Dykstra* amounts to a specific factual determination that the inmate has engaged in sexually inappropriate behavior." *Id.* at 496. We decided that when "the inquiry draws more on the experience of prison administrators," rather than "the search for specific facts," "the full panoply of protections that would accompany a formal hearing" were unnecessary. *Id.* at 496–97 (first quoting *Wilkinson v. Austin*, 545 U.S. 209, 228–29, 125 S. Ct. 2384, 2397, 162 L. Ed. 2d 174, 193 (2005)).

majority observed that "even district courts may not rely on these types of 'facts'" and pointed to decisions excluding the minutes from consideration in sentencing decisions. *Id.* at \*4. The dissenting judge stated, "I would conclude IDOC can rely on unadmitted-to facts when initially *referring* an inmate to SOTP, but, then, due process requires a hearing before an independent factfinder before participation in SOTP is *required.*" *Id.* at \*6 (Vogel, P.J., dissenting). We now hold the IDOC's use of the victim's statement quoted in the police report did not exceed its statutory authority or violate Irvin's due process rights.

The court of appeals majority in *Lindsey*, and the district court in this case, erred by concluding the limitations on a district court's use of minutes at trial or sentencing precluded an IDOC ALJ from relying on a detailed victim's statement that happened to be attached to the minutes. The formal rules of evidence that govern trials in district court do not apply to hearings before an IDOC ALJ. *See Dykstra*, 783 N.W.2d at 485 ("Prison proceedings 'are sui generis, governed by neither the evidentiary rules of a civil trial, a criminal trial, nor an administrative hearing. The only limitations appear to be those imposed by due process, a statute, or administrative regulations.'" (quoting 2 Michael B. Mushlin, *Rights of Prisoners* § 9.20, at 208 (3d ed. 2002))); *see also Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *Dailey v. Neb. Dep't of Corr. Servs.*, 578 N.W.2d 869, 874 (Neb. Ct. App. 1998) ("[T]he weight of authority in both federal and state cases is that the [formal] rules of evidence do not apply" in prison discipline proceedings.). Indeed, we have affirmed prison discipline decisions that were based on hearsay in written reports of confidential informants. *See, e.g., James v. State*, 541

N.W.2d 864, 874 (Iowa 1995). "Under the 'some evidence' standard, 'the relevant [legal] question is whether there is *any* evidence in the record' that could support the committee's decision." *Id.* (alterations in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356, 365 (1985)).

The minutes of testimony set forth the factual circumstances giving rise to the charges against Irvin. *See* Iowa R. Crim. P. 2.5(3) (providing minutes shall contain "the name and occupation of each witness upon whose expected testimony the information is based, and a full and fair statement of the witness' expected testimony"). Minutes must "be approved by a district judge" who finds that the evidence contained in the minutes, "if unexplained, would warrant a conviction by the trial jury." *Id.* r. 2.5(4). The minutes provide a description, both to the reviewing judge and to the offender, of the circumstances alleged by the State to support the charge.

Use of minutes of testimony is limited in district court. District courts are not permitted to consider "additional, unproven, and unprosecuted charges" during sentencing, unless "the facts before the court show defendant committed those offenses or they are admitted by him." *State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981).[2] Similarly,

---

[2]Nonetheless, facts set forth in the minutes can be relied upon in district court in certain instances. Courts may refer to the minutes of testimony to find a factual basis for a guilty plea. *State v. Finney*, 834 N.W.2d 46, 57 (Iowa 2013) (assessing whether counsel had been ineffective in allowing defendant to plead guilty and relying on the "entire record," including evidence provided in minutes). District courts may rely on the charging documents of unprosecuted offenses in determining conditions of release, in which "the nature and circumstances of the offense charged" is the first factor the statute instructs courts to consider. *See* Iowa Code § 811.2(2); *State v. Fenton*, 170 N.W.2d 678, 679 (Iowa 1969) (setting bail based on defendant's criminal history and "county attorney's information" charging defendant with rape). At probation revocation hearings, we allow charged, but unconvicted, offenses to serve as the basis for

minutes of testimony "are not evidence" at trial. *State v. De Bont*, 223 Iowa 721, 723, 273 N.W. 873, 874 (1937).

In *Stenzel,* when reviewing an appeal from a judgment committing the defendant as a sexually violent predator (SVP), we found expert testimony based on unproven facts in the minutes inadmissible as more prejudicial than probative. 827 N.W.2d at 710. Because the minutes are "a statement of what the prosecution expected (at one point) to prove," we "question[ed] the basic fairness of the State's using materials that it generated exclusively to prosecute Stenzel criminally as a factual ground for committing him as an SVP at the conclusion of his sentence." *Id. Stenzel* applied the rules of evidence governing trials in district court. *Stenzel* is distinguishable from the present case because it was not a prison classification proceeding, but a formal trial to determine whether the defendant would be civilly committed at the conclusion of his prison sentence. *See id.* at 692. *Stenzel* is further distinguishable because here the IDOC and ALJ relied upon the victim's statement, not the allegations as drafted by a prosecutor.

The district court misapplied *Stenzel* to the IDOC proceedings, in which use of hearsay is permitted. *See Wilson v. Farrier,* 372 N.W.2d 499, 502 (Iowa 1985) (affirming prison-discipline decision that relied on informant's confidential statement). Here, we must decide whether this detailed victim's statement, quoted in the police report, may be used to support the IDOC classification. We conclude the IDOC did not err in relying on the victim's statement, either in its initial referral to SOTP or

_____

revocation when the State can show the defendant violated the law by a preponderance of the evidence. *Rheuport v. State,* 238 N.W.2d 770, 772 (Iowa 1976).

in the ALJ's decision to require participation. We address each phase in turn.

1. *The IDOC's initial referral to SOTP.* First, we conclude the IDOC may rely on a victim's account in a police report prepared nearly contemporaneously with the incident in classifying inmates for SOTP. The IDOC's initial classification is just that—initial. No earned time is withheld for lack of participation by an inmate who was not convicted of a sex offense unless and until the inmate is provided with the *Wolff* due process protections, including an evidentiary hearing before an ALJ.

It is instructive to contrast the requirements for SOTP in Iowa Code section 903A.4 to the statutory requirements for sex offender registration. Iowa Code section 692A.103 requires a person to register as a sex offender if the person has been convicted of a "tier I, tier II, or tier III offense." For certain offenses, the legislature has expressly required a factual determination that the offense was "sexually motivated" in order to qualify as a tier I, II, or III offense. *See, e.g.*, Iowa Code § 692A.102(1)(*c*)(19). "*Sexually motivated*" means "one of the purposes for commission of a crime is the purpose of sexual gratification of the perpetrator of the crime." *Id.* § 229A.2(9); *see also id.* § 692A.101(29). For certain convictions occurring after July 1, 2009, the statute expressly provides that a judge or jury must make a factual determination "beyond a reasonable doubt" that an offense was sexually motivated in order to require an individual to register. *Id.* § 692A.126(1).

No analogous requirements exist for SOTP. Nowhere in chapter 903A does the legislature require a judge or jury to make a factual finding that an offense was sexually motivated to refer an inmate to SOTP. "[L]egislative intent is expressed by omission as well as by inclusion of statutory terms." *Oyens Feed & Supply, Inc. v. Primebank,*

808 N.W.2d 186, 193 (Iowa 2011) (alteration in original) (quoting *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 812 (Iowa 2011)). When the legislature selectively places language in one section and avoids it in another, we presume it did so intentionally. *Id.* That the legislature expressly required a judge or jury to find sexual motivation beyond a reasonable doubt in chapter 692A but omitted such a requirement in chapter 903A tells us the legislature intended to allow the IDOC discretion to refer an inmate to SOTP without that level of proof. *See Dykstra,* 783 N.W.2d at 484–85 ("We note . . . the standard for prison administrative decisions is 'some evidence' as opposed to the 'beyond a reasonable doubt' required in criminal trials."); *see also Wilson,* 372 N.W.2d at 501 ("We hold that the requirements of due process are satisfied if some evidence supports the decisions by the prison disciplinary board to revoke good time credits.").

Practical concerns also support allowing IDOC to refer to factual accounts such as victim statements in police reports when making its initial classification. Most criminal charges are resolved through plea bargains.[3] The sex abuse charges may be dismissed to secure a conviction on lesser assault charges, as happened here. The IDOC and ALJ lacked access to sealed deposition transcripts and Irvin did not provide them. Inmates who need treatment would avoid SOTP if the information in the victim's statement could not be used to trigger an evidentiary hearing. We conclude that the IDOC may refer an offender for SOTP based on a victim's detailed account in a police report.

---

[3]"An estimated ninety-five percent of convictions are secured through the plea-bargaining process." *State v. Lopez*, 872 N.W.2d 159, 161 n.1 (Iowa 2015) (quoting *State v. Fannon*, 799 N.W.2d 515, 520 n.2 (Iowa 2011)).

2. *The ALJ's determination requiring SOTP.* We next address Irvin's hearing before the IDOC ALJ. An ALJ in a prison disciplinary proceeding is an independent, impartial adjudicator. *See Edwards*, 825 N.W.2d at 16–17 (noting IDOC ALJs report to and are supervised by the IDOC's general counsel rather than the warden). An ALJ's decision in a disciplinary proceeding affecting earned-time credits will be affirmed so long as there is "some evidence" in the record to support it. *Backstrom v. Iowa Dist. Ct.*, 508 N.W.2d 705, 710–11 (Iowa 1993) ("We further believe the federal constitution requires only that state prison disciplinary officials apply a 'some evidence' standard in their initial determination of disciplinary proceedings.").

In *Hill*, inmates challenged the decision of a prison disciplinary board finding them guilty of violating a prison rule prohibiting assault and revoking good-time credits. 472 U.S. at 448, 105 S. Ct. at 2770, 86 L. Ed. 2d at 360. The Massachusetts Supreme Court, "[w]ithout deciding whether the appropriate standard of review [was] 'some evidence' or the stricter test of 'substantial evidence,' " overturned the disciplinary court's decision, finding the record failed to present even "some evidence . . . [that] would rationally permit the board's findings." *Id.* at 449, 105 S. Ct. at 2770, 86 L. Ed. 2d at 360 (quoting *Hill v. Superintendent*, 466 N.E.2d 818, 822 (Mass. 1984)). The United States Supreme Court addressed whether the "findings of a prison disciplinary board that result in the loss of good time credits must be supported by a certain amount of evidence in order to satisfy due process." *Id.* at 453, 105 S. Ct. at 2773, 86 L. Ed. 2d at 363. The Court noted its prior cases failed to specify what "quantum of evidence" was required "to support the factfinder's decision" in a prison disciplinary proceeding. *Id.* at 454, 105 S. Ct. at 2773, 86 L. Ed. 2d at 364.

The *Hill* Court determined that the "requirements of due process are satisfied if some evidence supports the decision by the disciplinary board to revoke good time credits." *Id.* at 455, 105 S. Ct. at 2774, 86 L. Ed. 2d at 365. The Court "decline[d] to adopt a more stringent evidentiary standard as a constitutional requirement," reasoning,

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

*Id.* at 456, 105 S. Ct. at 2774, 86 L. Ed. 2d at 365 (citations omitted). The Court determined the "some evidence" standard would "prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455, 105 S. Ct. at 2774, 86 L. Ed. 2d at 364. Under this standard, the Court concluded that the prison board had been presented with sufficient evidence to find the inmates violated the disciplinary rule and revoke good-time credits. *Id.* at 456, 105 S. Ct. at 2774–75, 86 L. Ed. 2d at 365. The Court based its holding on testimony from the prison guard and evidence that no other inmates were in the area at the time of the assault. *Id.*

In *Farrier*, we adopted the "some evidence" standard as the appropriate standard of judicial review for prison disciplinary proceedings. 372 N.W.2d at 501–02. An inmate charged with committing a murder during an uprising inside the Iowa State Penitentiary was acquitted in his district court criminal trial. *Id.* at 500. The prison disciplinary board, however, found him guilty of the offense

and forfeited all of his earned time. *Id.* We adopted the "some evidence" standard followed by the Supreme Court and federal circuits and upheld the committee's sanction. *Id.* at 502.

Eight years later, in *Backstrom,* we concluded the "some evidence" standard applied to an IDOC ALJ's factual findings. 508 N.W.2d at 710. An inmate challenged a disciplinary committee's determination that he smuggled alcohol into the prison. *Id.* at 708. The disciplinary report was based on testimony from a confidential informant. *Id.* We concluded that the Supreme Court's language in *Hill* "clearly refer[red] to the level of evidence used by prison administrators in their factual determinations," not merely on judicial review. *Id.* at 711. "Although the 'some evidence' standard may seem harsh," we noted it was sufficient to protect prisoners from retaliatory treatment. *Id.* Under that standard, we decided the ALJ had properly found Backstrom guilty of the offense. *Id.* We reaffirmed application of the "some evidence" standard a year later in *Marshall v. State*, 524 N.W.2d 150, 152 (Iowa 1994) (per curiam). Today, we reaffirm that the "some evidence" standard applies to making and reviewing factual findings in prison proceedings, including SOTP classification hearings.

"The threshold for determining whether some evidence exists is low"; it can be satisfied by relying on hearsay statements, such as statements from officers or confidential informants. *Johnson v. State*, 542 N.W.2d 1, 2 (Iowa Ct. App. 1995); *see Mahers v. State*, 437 N.W.2d 565, 569–70 (Iowa 1989) (relying on a report from a correctional officer); *Farrier*, 372 N.W.2d at 502 (relying on statement from confidential informant). Still, the "some evidence" standard is not without teeth. When officials use hearsay statements from a confidential informant to meet the "some evidence" standard, the inmate's "interest in a fair

hearing requires that there be some indication of the confidential informant's reliability." *James*, 479 N.W.2d at 291. Specifically, "there must be sufficient information in the record to convince a reviewing authority that the [decision-maker] undertook such inquiry and correctly concluded that the confidential information was credible and reliable." *Id.* We have recognized this standard can be satisfied by *in camera* review of material documenting credibility or corroboration with other statements or evidence. *See id.* at 292 (concluding informants reliable because they incriminated themselves by providing information, and other evidence corroborated their account); *Farrier*, 372 N.W.2d at 502–03 (concluding informant was credible based on examination of documents *in camera*). We have also found the standard satisfied when a court determined "the confidential information contain[ed] a great many details . . . [, and t]here appear[ed] to be no bias motivating the source." *Key v. State*, 577 N.W.2d 637, 641 (Iowa 1998). Our precedent allows an IDOC ALJ to rely on hearsay reports of confidential informants so long as there is an indicia of reliability such that the ALJ can determine the information is reliable and credible. The same requirement applies to victim statements.

We conclude that if the ALJ determines the victim's statement from the underlying assault case to be reliable and credible, it may be used to satisfy the "some evidence" standard to classify the inmate for SOTP. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1219, 1221 (10th Cir. 2004) (rejecting inmate's challenge to his classification as a sex offender by hearing panel that "relied on a detailed written account from the victim of the alleged sexual assault" denied by the inmate); *Vondra v. Colo. Dep't of Corr.*, 226 P.3d 1165, 1169–70 (Colo. App. 2009) (affirming prison hearing panel's determination requiring sex offender treatment based on

police reports and victim's statements after offender was provided *Wolff* due process protections). An ALJ may also use the inmate's own testimony in the hearing, alone or as corroboration with the detailed victim statement, to decide whether SOTP should be required.

We conclude the statement of Irvin's victim bears a sufficient indicia of reliability. A police officer took the victim's statement in Irvin's underlying assault case on the morning after the incident; thus, it was a near-contemporaneous factual account of the events while the victim's memory was fresh. It is a crime to file a false report with a police officer. *See* Iowa Code § 718.6(1) ("A person who reports or causes to be reported false information to . . . a law enforcement authority . . . knowing that the information is false . . . commits a serious misdemeanor . . . ."); *id.* § 903.1 (stating serious misdemeanors are punishable by a fine of at least $315 and imprisonment of up to a year).

Police reporting documents such as citations have been relied upon in contested case administrative proceedings. *Gaskey v. Iowa Dep't of Transp.*, 537 N.W.2d 695, 696 (Iowa 1995) (relying upon "[t]he implied consent form, the notice of revocation, the request for hearing, a stay order, a computer printout of Gaskey's driving record, and a copy of the citation issued to Gaskey" in license revocation proceeding before ALJ); *see also Schmitz v. Iowa Dep't of Human Servs.*, 461 N.W.2d 603, 607–08 (Iowa Ct. App. 1990) (discussing use of hearsay evidence in administrative hearings). Iowa Code chapter 17A provides,

> A finding shall be based upon the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs, and may be based upon such evidence even if it would be inadmissible in a jury trial.

Iowa Code § 17A.14(1); *see also Dykstra*, 783 N.W.2d at 482 ("Generally, a person has a constitutional due process right to an evidentiary hearing

*in accordance with contested case procedures . . . .*" (Emphasis added.) (quoting *Brummer v. Iowa Dep't of Corr.*, 661 N.W.2d 167, 172 (Iowa 2003))). Irvin does not contend the Iowa Administrative Procedure Act governs our review. Nevertheless, we conclude this victim's statement would be sufficiently credible and reliable to support the IDOC ALJ's findings under section 17A.14(1) as well as the "some evidence" standard.

Moreover, Irvin's testimony at the hearing corroborated the victim's statement. Irvin admitted during the hearing that he pushed the victim away by the throat after she did not perform oral sex in the way that he expected. Irvin also testified at the hearing that the victim would not have to "fabricate a story if she wanted him to leave," supporting the victim's credibility. The ALJ properly relied on the victim's statement set forth in the police report together with Irvin's admissions and guilty plea, in which he acknowledged "knowingly" impeding his victim's ability to breathe. We review that decision under the governing "some evidence" standard and uphold the ALJ's factual findings that are supported by "any" evidence in the record. *Key*, 577 N.W.2d at 641. Applying that standard of review here, we uphold the ALJ's finding of a sexual component to Irvin's assault conviction.

For all these reasons, we reject the reasoning in *Lindsey*. We hold the ALJ properly relied on the victim's detailed statement and Irvin's own testimony and guilty plea to require Irvin to complete SOTP. The IDOC properly upheld the ALJ's decision. The district court erred by reversing the IDOC's determination.

**C. Irvin's Due Process Claim.** We next address whether the use of the victim's statement to classify an offender for SOTP violates due process. "Procedural due process 'act[s] as a constraint on government

action that infringes upon an individual's liberty interest, such as the freedom from physical restraint.'" *Holm*, 767 N.W.2d at 417 (quoting *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005)). However,

> [p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all.

*Wilkinson*, 545 U.S. at 225, 125 S. Ct. at 2395, 162 L. Ed. 2d at 191; *see also Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951 ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.").

"[T]he first step in any procedural due process inquiry is the determination of 'whether a protected liberty or property interest is involved.'" *Dykstra*, 783 N.W.2d at 480 (quoting *Seering*, 701 N.W.2d at 665). If a liberty interest is involved, we analyze the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail.

*Seering*, 701 N.W.2d at 665 (quoting *Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002)).

Irvin argues that IDOC failed to provide due process for the initial SOTP classification because the IDOC relied on the victim's statement in its recommendation to the ALJ. In *Dykstra*, we recognized a liberty interest in the classification for SOTP based on the stigmatizing

consequence of being labeled a sex offender, the mandatory treatment, and the revocation of earned time. *Dykstra*, 783 N.W.2d at 481. We also observed that when a factual inquiry outside "the face of the conviction" of the crime is necessary, "resort to some tribunal must be available to resolve disputes." *Id.* (quoting *Kruse v. Iowa Dist. Ct.*, 712 N.W.2d 695, 700–01 (Iowa 2006)) (observing that to comply with due process tribunal must be available to resolve whether assault conviction required offender to register); *Brummer*, 661 N.W.2d at 172 (stating, if proceeding involves "adjudicative facts" particular to the parties, an evidentiary hearing is necessary). In *Dykstra*, the initial decision made by the IDOC regarding SOTP was also the final classification determination. 783 N.W.2d at 482–83. Not so with Irvin. Rather, Irvin's initial classification began the process. Irvin was then provided the opportunity to challenge that classification through an evidentiary hearing.

The IDOC has a significant interest in rehabilitating sex offenders before their release. *See McKune*, 536 U.S at 32–33, 122 S. Ct. at 2024, 153 L. Ed. 2d at 56–57. In *Wolff*, the Supreme Court stressed that for due process in prison discipline cases, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." 418 U.S. at 556, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951.

> [T]here would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of a criminal trial, very likely to raise the level of confrontation between staff and inmate, and make more difficult the utilization of the disciplinary process as a tool to advance the rehabilitative goals of the institution.

*Id.* at 563, 94 S. Ct. at 2978, 41 L. Ed. 2d at 955. Irvin's due process claim fails because the IDOC complied with the *Wolff* requirements. *Id.* at 763–71, 94 S. Ct. at 2978–82, 41 L. Ed. 2d at 955–59.

In *Gwinn,* a case directly on point, the United States Court of Appeals for the Tenth Circuit affirmed a summary judgment dismissing an inmate's due process claims against Colorado correctional officials. 354 F.3d at 1221. The inmate in state court initially was charged with sexual assault, but that charge was dropped in a plea bargain resulting in his conviction for robbery. *Id.* at 1217. The presentence report included the victim's detailed written account of the sexual assault. *Id.* at 1217, 1219. The inmate was provided a hearing consistent with *Wolff.* *Id.* at 1218–19. He submitted a written denial of the victim's allegations. *Id.* at 1219. The prison hearing panel upheld his classification requiring treatment based on the victim's statement. *Id.* The federal district court upheld the classification and dismissed the inmate's due process claims. *Id.* at 1221. The Tenth Circuit affirmed, concluding the inmate "received the procedural protections required by the Due Process Clause" because he "was afforded notice of the evidence against him and an opportunity to present evidence in his own behalf, and he received a written decision." *Id.* We reach the same conclusion as to Irvin.

Irvin received advance notice of his hearing before the ALJ. At the hearing, he presented a factual statement signed by him, caselaw supporting his position, and documents from his underlying trial. He was allowed to testify. The ALJ was impartial. *See Edwards,* 825 N.W.2d at 16. The ALJ could find and did find Irvin's version of events not credible in light of Irvin's admissions and the victim's detailed statement. The ALJ relied on Irvin's own admissions and testimony rather than relying solely on unadmitted factual allegations. The ALJ's

factual findings of a sexual component to Irvin's assault are clearly supported by "some evidence." *See Key*, 577 N.W.2d at 641 ("On appellate review of a prisoner's challenge to the evidentiary support of a disciplinary matter, we ask whether the committee had 'some evidence' to support its decision." (quoting *Backstrom*, 508 N.W.2d at 709). After the hearing, Irvin received a written decision from the ALJ detailing the reasons for the classification and was allowed to appeal that decision to the warden. We conclude Irvin received the due process to which he was entitled under *Dykstra*.

**IV. Disposition.**

For those reasons, we sustain the writ, vacate the district court's ruling, and remand this case with instructions to reinstate the IDOC's determination requiring SOTP for Irvin.

**WRIT SUSTAINED AND CASE REMANDED.**